T.C. Memo. 2000-240


UNITED STATES TAX COURT


VERNON MILLER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No.   9118-98.                    Filed August 4, 2000.


Helen Jennings, for petitioner.

Peter C. Rock, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined a deficiency of
$42,924 in petitioner's Federal income tax for 1993.

We must decide whether petitioner is entitled for 1993 to a
business bad debt deduction.[1]  We hold that he is not.

_____

[1]Although there are certain other issues in this case, their
(continued...)

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Certain other facts were deemed admitted pursuant to either Rule 37(c)[2] or Rule 90(c).[3]

Petitioner resided in Reno, Nevada, at the time the petition was filed.

On or about March 6, 1986, petitioner lent $75,000 to 551 Lytton Avenue Associates, a California limited partnership (Partnership). (We shall refer to that $75,000 loan as the Miller loan.) At all relevant times, Philip Wire (Mr. Wire) and Barbara J. Turner (Ms. Turner) were general partners of Partnership. At no time was petitioner a partner of Partnership.

Partnership was obligated to pay petitioner a total of $82,500 on the due date of the Miller loan consisting of $75,000 in principal and $7,500 in points. In addition, the Miller loan

_____

[1](...continued)
resolution flows automatically from our resolution of the bad debt issue.

[2]All Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code (Code) in effect for the year at issue.

[3]Pursuant to Rule 90(c), petitioner is deemed to have admitted, inter alia, that he made the loan involved here on or about Mar. 6, 1988. However, the stipulation of facts filed in this case establishes that petitioner made that loan on or about Mar. 6, 1986, and not on or about Mar. 6, 1988. We therefore modify the deemed admission relating to the date on which petitioner made the loan in question to reflect the correct date. See Rule 90(f).

was to bear interest at 16 percent. However, the interest rate on the Miller loan was deemed to be usurious under California law.

The note evidencing the Miller loan stated in pertinent part: "Should suit be commenced to collect this note or any portion thereof, such sum as the Court may deem reasonable shall be added hereto as attorney's fees."

The Miller loan was not paid when due. On February 20, 1987, petitioner filed a complaint in the Superior Court of California for Santa Clara county against, inter alia, Partnership, Mr. Wire, and Ms. Turner for, inter alia, the amount due to him on default of the Miller loan. (We shall refer to that lawsuit as the Miller loan litigation.) After a trial, it was determined that petitioner was entitled to recover $75,000 of the Miller loan, with offsets of $72,358.88 attributable to the amount of principal that he had recovered from Ms. Turner. As of 1991, petitioner had recovered $72,358.88 of the $75,000 Miller loan.

The Miller loan litigation continued after 1993. Petitioner incurred substantial legal expenses through 1993 (i.e., at least $90,999[4]) as well as after 1993 (i.e., at least $69,693) with respect to his claims regarding the Miller loan. With respect to

_____

[4]For convenience, we have rounded to the nearest dollar the respective amounts of legal fees that petitioner incurred and/or paid.

such legal expenses incurred through 1993, petitioner had paid at least $46,593 as of the end of that year. With respect to such legal expenses incurred after 1993, petitioner had paid at least $64,142 after that year. As a result of the Miller loan litigation, on or about March 3, 1998, petitioner was awarded from Ms. Turner $208,206 in attorney's fees incurred in connection with that litigation.

Sometime during or shortly after 1986, petitioner met Rick Patterson (Mr. Patterson), a real estate broker. Throughout Mr. Patterson's relationship with petitioner, petitioner was interested in acquiring and selling real property and in financing purchases of real property made by other clients of Mr. Patterson. As of the time of the trial in this case, petitioner had participated, directly or indirectly, in at least six real estate transactions in which he acquired interests, and at least three transactions in which he sold interests, in various real properties. One of the real estate transactions in which petitioner acquired an interest in real property involved petitioner's purchase of a mobile home that he used as his residence for a period of time not disclosed by the record. As of the time of the trial in this case, petitioner had lent money to at least seven individuals who were referred to him by Mr. Patterson, having made more than one loan to at least two of those individuals. As of the time of the trial in this case, petitioner had

also used the services of Mr. Patterson in selling petitioner's direct or indirect interests in four radio stations. Petitioner financed one of those sales, having received six notes from the purchaser in connection with that financing.

Petitioner filed Form 1040, U.S. Individual Income Tax Return (return), for 1993, the year at issue, in which he reported, inter alia, taxable interest income of $47,211 and dividend income of $23. Petitioner's 1993 return included: (1) Schedule C, Profit or Loss From Business (Schedule C), which showed a $3,810 loss from an appliance repair business; (2) Schedule D, Capital Gains and Losses (Schedule D), which showed total short-term capital losses of $28,039 and total long-term capital losses of $70,000; (3) Schedule E, Supplemental Income and Loss (Schedule E), which showed total rental real estate income of $113,103 and total partnership losses of $295; and (4) Form 4797, Sales of Business Property (Form 4797), in which petitioner claimed a loss of $109,482 from the sale or exchange of property used in a trade or business. The $109,482 loss claimed in Form 4797 related to the Miller loan and included expenditures that he made in connection with recovering that loan. The basis of the property for which petitioner claimed a loss in Form 4797 was listed in that form as $212,029. Petitioner also reflected the $109,482 loss that he claimed in that form as "Other gains or (losses)" on page 1, line 15, of his 1993

return.

Petitioner's returns for 1979, 1987 through 1989, and 1991 through 1993 included Schedules B, Interest and Dividend Income, showing taxable interest income and, for certain of those years, dividend income. Petitioner's returns for 1979 and 1991 through 1993 included Schedules C, each of which showed net profit or a loss from a business other than a business of making loans or any other type of investment business.[5] Petitioner's returns for 1979, 1987, 1988, and 1991 through 1993 included Schedules D, certain of which showed a net capital gain and others of which showed a net capital loss.[6] Petitioner's returns for 1979, 1987, 1989, and 1991 through 1993 included Schedules E which showed (1) income or a loss from two or more rental properties,[7] (2) for

_____

[5]Petitioner's 1979 return included four Schedules C, each of which showed net profit or a loss from a business. Petitioner's 1991 return included two Schedules C, each of which showed a loss from a business. Each of petitioner's returns for 1992 and 1993 included one Schedule C, each of which showed a loss from a business.

[6]In Schedule D of each of petitioner's returns for 1991 and 1992, petitioner reported a net capital loss which was attributable to a claimed nonbusiness bad debt.

[7]The following chart shows the number of rental properties from which petitioner reported rents received in Schedule E of each of his returns for 1979, 1987, 1989, and 1991 through 1993:

(continued...)

certain of those years, a loss attributable to petitioner's interest in a partnership, and (3) for one of those years, income from an S corporation. Each of petitioner's 1988, 1989, and 1992 returns included a schedule which showed an exchange of properties from which petitioner realized capital gain.

In the notice of deficiency issued to petitioner for 1993 (notice), respondent determined, inter alia, to disallow the $109,482 that petitioner claimed in his 1993 return as "Other * * * losses".

OPINION

Petitioner bears the burden of proving that the determinations in the notice are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

In his 1993 return, petitioner claimed with respect to the Miller loan that he had a loss of $109,482 from the sale or exchange of property used in a trade or business. Petitioner changed his return position at trial and on brief. Petitioner

---

[7](...continued)

| Year of Return | Number of Properties |
|---|---|
| 1979 | 5 |
| 1987 | 5 |
| 1989 | 2 |
| 1991 | 3 |
| 1992 | 3 |
| 1993 | 4 |

now contends with respect to that loan that he is entitled to a business bad debt deduction under section 166(a) of $112,123. Respondent counters that petitioner is not entitled to a business bad debt deduction, or to any other deduction, for 1993 with respect to the Miller loan.

In support of his position that he is entitled to a business bad debt deduction under section 166(a), petitioner contends that the Miller loan constituted a business debt for purposes of section 166, that $2,641[8] of that loan became worthless during 1993 within the meaning of that section, and that the amount of the deduction under section 166(a) for 1993 attributable to that worthless debt is $112,123, consisting of $2,641 of unrecovered principal of the Miller loan and $109,482 of attorney's fees which he claims he incurred as of the end of 1993 in recovering that loan.[9]  Respondent disputes petitioner's contentions.

Section 166 allows a taxpayer to deduct any business debt which becomes wholly or partially worthless during the taxable year.[10]  See sec. 166(a), (d)(1)(A).  The basis for determining

---

[8]For convenience, we have rounded to the nearest dollar the amount of the unrecovered portion of the Miller loan as of the end of 1993.

[9]We have considered all of the contentions and arguments of petitioner that are not discussed herein, and we find them to be without merit and/or irrelevant.

[10]In the case of a taxpayer other than a corporation, where a nonbusiness debt becomes worthless during the taxable year, the
(continued...)

the amount of the deduction under section 166(a) for any business bad debt is the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. See sec. 166(b). As pertinent here, section 1011(a) provides that the adjusted basis for determining the gain or loss from the sale or other disposition of property is the basis determined under section 1012, adjusted as provided in section 1016, and section 1012 provides that the basis of property is its cost.

We turn first to a determination of whether the Miller loan constitutes a business debt for purposes of section 166. That determination requires a factual inquiry. See sec. 1.166-5(b), Income Tax Regs. As we understand his position, petitioner contends that the Miller loan constitutes a business debt for purposes of section 166 because he made that loan during 1986 (1) generally as part of his investment business and/or (2) specifically as part of his investment business of making loans.

Based on our examination of the entire record before us, we

---

[10](...continued)
loss resulting therefrom is to be considered a loss from the sale or exchange during the taxable year of a capital asset held for not more than one year. See sec. 166(d)(1)(B). Sec. 166(d)(2) defines a nonbusiness debt to mean a debt other than (1) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer or (2) a debt, the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

find that petitioner has failed to establish that, when he made the Miller loan in 1986, he was in the trade or business of either investing generally or making loans specifically.[11]  See, e.g., Rollins v. Commissioner, 32 T.C. 604, 612-615 (1959), affd. 276 F.2d 368 (4th Cir. 1960).  We further find on the instant record that petitioner has failed to establish that the Miller loan constitutes a business debt for purposes of section 166.  Accordingly, on the record before us, we hold that petitioner is not entitled to a business bad debt deduction under section 166(a) with respect to that loan.

We consider now whether petitioner is entitled to nonbusiness bad debt treatment under section 166(d) with respect to the Miller loan.  To resolve that question, we shall determine whether the $2,641 of unrecovered principal of the Miller loan became worthless during 1993.[12]  That determination also requires a factual inquiry.  See Aston v. Commissioner, 109 T.C. 400, 415 (1997).

Generally, a loan is considered worthless during the taxable

_____

[11]We further find on the record in this case that petitioner has failed to show that during 1993, the year in which petitioner claims the Miller loan became worthless, he was in the trade or business of either investing generally or making loans specifically.

[12]We note that a loss on a nonbusiness debt is to be treated as sustained only if and when the debt has become totally worthless, and no deduction is to be allowed for a nonbusiness debt which is recoverable in part during the taxable year.  See sec. 1.166-5(a)(2), Income Tax Regs.

year in which there is no reasonable prospect of recovering the loan. See Aston v. Commissioner, supra; Crown v. Commissioner, 77 T.C. 582, 598 (1981). The determination of worthlessness must be fixed by identifiable events which form the basis of reasonable grounds for abandoning any hope of recovery. See Aston v. Commissioner, supra; Crown v. Commissioner, supra.

Based on our examination of the entire record before us, we find that petitioner has failed to establish that the $2,641 of unrecovered principal of the Miller loan became worthless during 1993. We find on that record that petitioner has failed to show any identifiable events which could have formed the basis of reasonable grounds for abandoning any hope of recovering that amount. In fact, the record establishes that petitioner continued to prosecute the Miller loan lawsuit after 1993 in order to recover the balance due on the Miller loan and the legal expenditures that he had incurred in connection with recovering the Miller loan. As a result of that lawsuit, petitioner was entitled to recover the entire $75,000 principal of the Miller loan (with offsets of $72,358.88 attributable to the amount of that principal that he recovered as of 1991), and on or about March 3, 1998, he was awarded $208,206 in attorney's fees incurred in connection with his litigation relating to that loan. On the record before us, we hold that petitioner is not entitled to nonbusiness bad debt treatment under section 166(d) with respect

to the Miller loan.[13]

Based on our examination of the entire record in this case, we find that petitioner has failed to establish that he is entitled to any deduction under section 166 with respect to the Miller loan.

We address now whether petitioner is entitled to a deduction under any other provision of the Code with respect to the Miller

---

[13]Assuming arguendo that we had found that petitioner established that the Miller loan was a business debt for purposes of sec. 166 and that the $2,641 of unrecovered principal of that loan became worthless during 1993, we nonetheless find on the instant record that petitioner has failed to show that the amount of the deduction under sec. 166(a) with respect to that loan, as determined under sec. 166(b), includes $109,482 of legal expenditures that he claims he incurred in pursuing the Miller loan litigation. As we understand it, petitioner bases his contention that such alleged expenditures are to be included as part of the adjusted basis of the Miller loan as determined under sec. 166(b) because the note evidencing that loan contained the following provision: "Should suit be commenced to collect this note or any portion thereof, such sum as the Court may deem reasonable shall be added hereto as attorney's fees." We note first that petitioner has failed to establish on the record in this case that he paid $109,482 of legal expenses as of the end of 1993. The record establishes that as of the end of that year petitioner had incurred only $90,999 of legal expenses, of which only $46,593 had been paid. Moreover, on the record in this case, we find no evidence that any court directed in the year at issue or in any year prior to or after that year that any amount, let alone a reasonable amount, be added to the principal of the Miller loan as attorney's fees. Assuming arguendo that we had found that petitioner established that the Miller loan was a business debt for purposes of sec. 166 and that the $2,641 of unrecovered principal of that loan became worthless during 1993, on the record before us, we find that petitioner has failed to persuade us that $109,482 of legal expenditures are includible under sec. 166(b) in determining the amount of deduction allowable for a business bad debt under sec. 166(a).

loan. As pertinent here, section 162(a) allows a deduction for ordinary and necessary expenses paid during the taxable year in carrying on any trade or business. We have found that petitioner has failed to establish that he was in the trade or business of either investing generally or making loans specifically in 1986, when he made the Miller loan, or in 1993, the year in which he claims that that loan became worthless. We find on the instant record that petitioner has failed to show that the $2,641 of unrecovered principal of the Miller loan and the legal expenditures that he had paid as of the end of 1993 in connection with the recovery of that loan constitute under section 162(a) ordinary and necessary business expenses that he paid during 1993 in carrying on a trade or business.

As pertinent here, section 212(1) and (2) allows a deduction for ordinary and necessary expenses paid during the taxable year for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income. We have found that, because the interest rate called for by the Miller loan was deemed to be usurious under California law, petitioner was entitled to recover only the principal of that loan, and the legal expenditures that petitioner had paid as of the end of 1993 were for the recovery of the principal of the Miller loan, and not for the recovery of interest thereunder. On the instant record, we find that petitioner has failed to show

that the unrecovered portion of the Miller loan and the legal expenditures that he had paid as of the end of 1993 in connection with the recovery of that loan principal constitute under section 212(1) and (2) ordinary and necessary expenses paid during 1993 for the production or collection of income or for the management, conservation, or maintenance of property held for the production of income.

Section 165 allows a deduction in the case of an individual for (1) a loss incurred in a trade or business, (2) a loss incurred in any transaction entered into for profit, even though not connected with a trade or business, and (3) a loss of property not connected with a trade or business or a transaction entered into for profit if such loss arises from fire, storm, shipwreck, or other casualty, or from theft. See sec. 165(a), (c). We have found that petitioner has failed to establish that he was in the trade or business of either investing generally or making loans specifically in 1986, when he made the Miller loan, or in 1993, the year in which he claims that that loan became worthless. We have also found that petitioner has failed to show that the $2,641 of unrecovered principal of the Miller loan became worthless during 1993. In addition, we have found that, because the interest rate called for by the Miller loan was deemed to be usurious under California law, petitioner was entitled to recover only the principal of that loan, and the

legal expenditures that petitioner had paid as of the end of 1993 were for the recovery of the principal of the Miller loan, and not for the recovery of interest thereunder.  On the record before us, we find that petitioner has failed to establish that the unrecovered portion of the Miller loan and the legal expenditures that he had paid as of the end of 1993 in connection with the recovery of that loan constitute under section 165(c) a loss that he incurred during 1993 (1) in a trade or business, (2) in a transaction entered into for profit, even though not connected with a trade or business, or (3) from fire, storm, shipwreck, or other casualty, or from theft.

To reflect the foregoing and the concession of petitioner,

<u>Decision will be entered</u>

<u>for respondent</u>.