**George B. and Helen M. DEMES, pro se, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 00–471T.**

United States Court of Federal Claims.

April 18, 2002.

George B. and Helen M. Demes, Park Ridge, IL, pro se.

Ellen C. Specker, Washington, DC, with whom was Assistant Attorney General Eileen J. O'Connor, for defendant.

*OPINION*

MILLER, Judge.

This tax case is before the court on defendant's motion to dismiss for lack of jurisdiction under RCFC 12(b)(1) or for failure to state a claim under RCFC 12(b)(4). Defendant's motion raises as its principal issue whether plaintiffs' claim for a refund is barred by the statute of limitations because the carryback for losses that plaintiffs claim is predicated on a personal nonbusiness debt, which carries a shorter limitations period than a business debt. Specifically, defendant argues that plaintiffs' status as shareholders does not allow them to claim a loss on a bad debt and relegates them to a tax treatment as short-term capital loss. Defendant also challenges whether plaintiffs properly can plead a claim for a refund as a breach of contract or under the Fifth Amendment. Argument is deemed unnecessary.

### FACTS

George B. Demes and Helen M. Demes ("plaintiffs") are individual taxpayers residing in Park Ridge, Illinois. Plaintiffs filed a Form 1040, U.S. Individual Income Tax Return for tax year 1989 (the "1989 Return"), reflecting total income of $151,022.00, taxable income of $108,799.00, tax liability of $33,467.00, and a $1,201.00 penalty for underpayment of estimated tax. On December 18, 1992, plaintiffs remitted $53,431.72 to the Internal Revenue Service (the "IRS"), in satisfaction of their 1989 tax liability, plus accumulated penalties and interest. Plaintiffs also filed a Form 1040, U.S. Individual Tax Return for tax year 1992 (the "1992 Return"), reflecting total income of $1,251.00, adjusted gross income of $1,251.00, negative taxable income of $20,523.00, zero total tax, zero total payments, zero overpaid, and zero owed.[1] According to the schedules filed with the 1992 Return, plaintiffs had experienced $153,380.00 in taxable capital gains, representing $162,926.00 from the sale of rental real estate known as the Annetta Hotel, offset by a $9,546.00 loss from the sale of plaintiffs' interest in the Alsip Bank. The capital gain income was itself offset by losses

---

1. Per the complaint the 1992 Return was not filed until February 8, 1997.

of $137,545.00 from plaintiffs' interest in certain S corporations, identified as the Annetta Hotel, Century 21, Investors I, Ltd. ("Century I"), and Century 21, Investors II, Ltd. ("Century II").

Plaintiffs allege that the 1989 Return and the 1992 Return were erroneous, because plaintiffs should have claimed all their losses as long-term losses or as return of capital on non-taxable transactions. The 1992 Return also was erroneous because it should not have reflected monies received on the sale of the Annetta Hotel as ordinary income. Although plaintiffs' allegations as to the circumstances of these errors are not entirely clear, it appears that their errors were related to errors contained in the tax returns filed by the partnerships in which plaintiffs had an interest.[2] According to plaintiffs, Ron Ward, identified as an accountant, and Alexander Sarovich, identified as plaintiffs' partner, prepared the 1992 tax returns for the Annetta Hotel, Century I, and Century II. Mr. Sarovich also maintained the books and records for the Annetta Hotel and Century I, as well as for an entity known as the Demes Sarovich Partnership. Plaintiffs allege that Messrs. Sarovich and Ward wilfully withheld the existence of plaintiffs' partnership business records, including the partnership returns, from plaintiffs, thereby precluding them from realizing their entitlement to a tax refund.[3]

On September 21, 1998, plaintiffs filed a Form 1040X, Amended U.S. Individual Income Tax Return for the tax years 1989 (the "1989 Amended Return") and 1992 (the "1992 Amended Return"). The 1989 Amended Return reflected a net loss of adjusted gross income, attributable to losses from the sale of business property, and sought a refund of taxes paid in the amount of $34,668.00. The 1992 Amended Return also reflected a net loss of adjusted gross income, this time reporting a negative adjusted gross income of $179,224.06, negative taxable income of $200,998.06, zero total tax, zero total payments, zero overpaid, and zero owed. The 1992 Amended Return differed in that plaintiffs eliminated the $153,380.00 in taxable income found on the 1992 Return and changed the losses from the sale of the Alsip Bank from $9,546.00 to $3,000.00. Furthermore, instead of reporting a $137,545.00 combined loss for its S corporations, plaintiffs claimed a $92,637.33 loss on the sale of the Annetta Hotel as a loss on the sale of business property and a $69,002.73 non-passive loss on income from S corporations for the Annetta Hotel and Century I. The 1992 Amended Return reported a net decrease of $180,475.06 in adjusted gross income from the 1992 Return, but did not claim a refund.

By letter dated March 29, 1999, the IRS disallowed plaintiffs' claim for a refund for 1989, on the ground that it was not timely filed.[4] By letter dated April 9, 1999, plain-

---

2. Included in the record are two briefs submitted by defendant in response to plaintiffs' "Request For Disclosure of Confidential Tax Information." In a request for an extension of time, defendant stated that it had responded to plaintiffs' request on November 8, 2001, and that plaintiffs had replied on December 10, 2001, a copy of which was received by defendant on January 30, 2002. Plaintiffs' request and reply, however, were not filed with the Court of Federal Claims, and their request is therefore not before the court. The court nevertheless carefully has reviewed the pleadings and determined that the requested documentation, which concerns the 1989 tax returns filed by the S corporations, as well as their accounting records and papers from an IRS audit, is not relevant to the resolution of the instant motion.

3. Although the complaint is rife with charges of fraud and negligence against Messrs. Ward and Sarovich, it does not disclose the nature of the putative fraud. Nor does the complaint disclose

the circumstances under which plaintiffs discovered the fraud or the sequence of events leading to the instant complaint. For example, although plaintiffs allege that they trusted Mr. Sarovich's integrity until May 1990, they do not elaborate on events at that time. Moreover, plaintiffs fail to explain why, on September 1, 1998, they successfully sought a protective order from the United States District Court, Northern District of Illinois, Eastern Division, requiring Mr. Ward to produce documents, including tax returns relating to businesses in which plaintiffs had a partnership interest.

4. The IRS letter advised plaintiffs that they may file a new claim if they had information not included in the 1989 Amended Return, provided that it was received within three years of the original filing of the return. Plaintiffs allege that on November 24, 1999, they submitted additional documentation to the IRS. They do not, however, reveal the nature of that documentation nor the IRS's response to it.

tiffs appealed. On February 24, 2000, the IRS denied the appeal, on the following grounds:

Your [sic] were unable to document that you incur the losses as shown on your amended return. You also failed to establish the losses were of the type that would extend statute to seven (7) years. You also failed to establish that you had a loss of the type that would create a net operating loss.

On August 7, 2000, plaintiffs filed the instant complaint, alleging entitlement to their claimed refund on the following theories: Count I, the Government's obligation to refund tax overpayments under the tax code; Count II, breach of implied contract as created by the tax code; Count III, a taking of plaintiffs' property in contravention of the Fifth Amendment; and Count IV, denial of due process in violation of the Fifth Amendment. Plaintiffs seek recovery of the $53,421.72 paid to the IRS pursuant to the 1989 Return and $108,862.44 in prejudgment interest, calculated at 20% *per annum.*

In response to defendant's motion for a more definite statement, plaintiffs explained that the 1989 Amended Return reflects a carryback loss from advances plaintiffs made to the Annetta Hotel and to Century I realized in 1992.[5] Defendant now moves to dismiss the complaint for lack of jurisdiction, arguing alternatively that plaintiffs' claim is time barred and that the complaint fails to state a claim.

## DISCUSSION

### 1. *Standards for motion to dismiss*

When a federal court reviews the sufficiency of the complaint, whether on the ground of lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted, "its task is necessarily a limited one." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled

to offer evidence to support the claims." *Id.* The court must accept as true the facts alleged in the complaint, *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988), and must construe such facts in the light most favorable to the pleader, *Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995) (court obligated "to draw all reasonable inferences in plaintiff's favor"). The burden of proving that the Court of Federal Claims has subject matter jurisdiction over a claim rests with the party seeking to invoke its jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); *Reynolds,* 846 F.2d at 748. At the pleading stage, general factual allegations may suffice to meet this burden, for on a motion to dismiss the court "presumes that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Briefs filed by *pro se* litigants are held to a less stringent standard than formal briefs filed by attorneys. *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Nevertheless, the leniency afforded *pro se* litigants with respect to mere formalities does not relieve them of jurisdictional requirements. *Kelley v. Sec., United States Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir. 1987). *Pro se* litigants are not immune from laws and rules of procedure simply on the basis of their *pro se* status. *See, e.g., Constant v. United States,* 929 F.2d 654, 658 (Fed.Cir.1991).

The Byzantine logic of the brief that plaintiffs filed deserves special mention. Plaintiffs reproduced defendant's arguments and merely postulated that they instead compelled a result in plaintiffs' favor. Attempting to wrest legal arguments from this presentation is a daunting task, but, more importantly, creates the possibility of an erroneous interpretation of the *pro se* litigants' claims. This is a sophisticated tax case, yet plaintiffs have chosen to proceed *pro se.*

---

5. Under certain circumstances a taxpayer may amend the gross income reported in a prior year's tax return to reflect losses subsequently incurred, effectively carrying back those losses.

*See, e.g.,* 26 U.S.C. § 172(b) (2000); *Olson v. United States,* 172 F.3d 1311, 1313 (Fed.Cir. 1999).

Recently, the Federal Circuit suggested that "in situations where a party appeared pro se before the lower court, a court of appeals may appropriately be less stringent in requiring that the issue have been raised explicitly below." *Forshey v. Principi*, 284 F.3d 1335, 1357 (Fed.Cir.2002). While a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate. The merging of roles is unfair to the opponent, who has enlisted and paid for legal assistance. In the circumstances presented by this case, the court has endeavored to be scrupulous in discharging its responsibility to extract legal significance from the various theories that plaintiffs have advanced without making plaintiffs' case for them.

### 2. *Contract and taking claims*

Plaintiffs predicate jurisdiction on the Tucker Act, 28 U.S.C. § 1491(a)(1) (1994 & Supp. V 1999). This provision confers the court with jurisdiction over plaintiffs' breach of implied contract claim. *Total Med. Mgmt., Inc. v. United States*, 104 F.3d 1314, 1319 (Fed.Cir.1997) ("[T]he law is clear that, for the Court of Federal Claims to have jurisdiction, a valid contract must only be pleaded, not ultimately proven."); *accord, Spruill v. MSPB*, 978 F.2d 679, 686–87 (Fed. Cir.1992). Nevertheless, plaintiffs have not alleged one single fact sufficient to support a claim for breach of contract. To establish a contract with the Government, a plaintiff must show (1) mutuality of intent to contract; (2) consideration; (3) lack of ambiguity in offer and acceptance; and (4) actual authority of the government representative whose conduct is relied upon to bind the Government in contract. *Lewis v. United States*, 70 F.3d 597, 600 (Fed.Cir.1995). Plaintiffs do not identify an express contract with the Government. The fact that taxpayers paid a tax that was not due does not create an implied-in-fact contract with the Government. *Rinaldi v. United States*, 30 Fed.Cl. 164, 167 (1993). Plaintiffs do allege that they are third-party beneficiaries of a government ob-ligation created by the Internal Revenue Code. However, plaintiffs have identified no provision that would satisfy the elements of offer and acceptance, and the court lacks jurisdiction over contracts implied in law. *See United States v. Mitchell*, 463 U.S. 206, 218, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed.Cir.1998); *Rinaldi*, 30 Fed. Cl. at 168. Plaintiffs' breach of contract claim is therefore dismissed for failure to state a claim upon which relief can be granted.

Similarly, because a taking is within the ambit of the court's Tucker Act jurisdiction, the court has jurisdiction over plaintiffs' takings claim. *Preseault v. ICC*, 494 U.S. 1, 11–12, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990). Plaintiffs nonetheless cannot state a claim for a taking because, although taxes "take" income, the imposition of a tax is not "the taking of private property for public use in the sense of the constitution." *County of Mobile v. Kimball*, 102 U.S. 691, 703, 26 L.Ed. 238 (1880); *Branch ex rel. Maine Nat'l Bank v. United States*, 69 F.3d 1571, 1576–77 (Fed.Cir.1995).

### 3. *Statutory claim*

Plaintiffs also bring their statutory suit for a refund under the auspices of the Tucker Act, which they contend is supported by 26 U.S.C. (I.R.C.) §§ 1201(a)(2000) (going to tax treatment of capital gains), 1221 (defining capital assets), 1231 (tax treatment of property used in a trade or business), and 172(c) (defining net operating losses). These provisions, which impose tax consequences or merely define terms, are not money-mandating provisions sufficient to confer the court with jurisdiction.[6] Nevertheless, plaintiffs' claim is for a tax refund over which this court has jurisdiction either under 28 U.S.C. § 1491(a) or 28 U.S.C. § 1346(a)(1) (1994). *See Denver & R.G.W. Co. v. United States*, 205 Ct.Cl. 597, 599, 505 F.2d 1266, 1267 (1974); *Calhoun v. United States*, 32 Fed.Cl. 400, 406 (1994).

---

6. Similarly, the Due Process Clause of the Fifth Amendment does not mandate the payment of money, and the court thus lacks jurisdiction over plaintiffs' due process claim. *Murray v. United States*, 817 F.2d 1580, 1583 (Fed.Cir.1987).

Plaintiffs' claim is properly one founded upon the Internal Revenue Code itself and therefore is subject to the restrictions found in it. *See Rinaldi*, 30 Fed.Cl. at 168–69. "Despite its spacious terms, § 1346(a)(1) must be read in conformity with other statutory provisions which qualify a taxpayer's right to bring a refund suit upon compliance with certain conditions." *United States v. Dalm*, 494 U.S. 596, 601, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990). I.R.C. § 6511(a) provides that a claim for a refund must be filed within three years from the time the return was filed or two years from the time the tax was paid, whichever was later. I.R.C. § 6511(d)(2)(A) additionally provides that if the claim for a refund relates to an overpayment attributable to a net operating loss carryback or a capital loss carryback, the claim must be filed within three years from the time the return was statutorily required to be filed, unless an extension was granted. However, if the claim for a refund relates to the overpayment of tax due to bad debts, worthless securities, and net operating losses, I.R.C. § 6511(d)(1) applies a seven-year statute of limitations, even if the claim relates to an overpayment attributable to a carryback. Neither the IRS nor the court has the power to waive the timeliness requirements set forth by Congress in the Internal Revenue Code. *United States v. Garbutt Oil Co.*, 302 U.S. 528, 533–34, 58 S.Ct. 320, 82 L.Ed. 405 (1938); *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1462–63 (Fed.Cir.1998) (discussing *United States v. Brockamp*, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997)).

Plaintiffs allege the 1989 Amended Return was based on a bad debt or worthless security and was filed within the seven-year statutory time period. Defendant disputes jurisdiction on the ground that plaintiffs' loss is not characterized properly as a bad debt, thus relegating plaintiffs to the three-year statute of limitations and foreclosing jurisdiction due to the expiration of the three-year period. Defendant's argument does not challenge the facts as alleged, but challenges the alleged characterization of plaintiffs' losses. Furthermore, defendant's argument relies on

a 1992 U.S. Income Tax Return for an S Corporation filed by Century I that is outside the pleadings. A motion to dismiss under 12(b)(1) may challenge the substance of the jurisdictional allegations in the complaint. *Reynolds*, 846 F.2d at 747. If the motion raises a question as to the truth of the jurisdictional allegations in the complaint, the court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matters outside the pleadings. *Id.; Indium Corp. of Am. v. Semi–Alloys, Inc.*, 781 F.2d 879, 884 (Fed.Cir.1985).

### 4. *Timeliness of plaintiffs' claim*

I.R.C. § 7422(a) provides:

No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

Plaintiffs filed the 1989 Amended Return on September 21, 1998, reflecting thereon that they were due a refund of $34,668.00. Under the Treasury Department's Regulations, this return constituted a claim for a refund, as well as a return for purposes of section 6511(a). 26 C.F.R. § 301.6402–3(a)(1)–(2) (2001). Plaintiffs' claim is thus timely for purposes of I.R.C. § 6511(a), which governs tax refund claims. *See McGregor v. United States*, 225 Ct.Cl. 566, 566 (1980) (claim for purposes of I.R.C. § 6511(a) timely if made within three years of date submitted, regardless of whether claim filed three years following its statutory due date).[7]

I.R.C. §§ 6511(a)(1) and 6511(d)(2)(A), however, are not pegged to the date of actual submission but to the statutory filing date. Plaintiffs' 1989 Amended Return is timely for purposes of the seven-year statute of limita-

---

7. To the extent that plaintiffs' complaint can be read as a claim for a refund due to errors on the

1989 Return and/or the 1992 Return alone, that claim would be untimely under I.R.C. § 6511(a).

tions applying to investment losses found in I.R.C. § 6511(d)(1), governing bad–debt losses, but not for purposes of the three-year statute of limitations found in I.R.C. § 6511(d)(2)(A), governing operating and capital loss carrybacks. Whether plaintiffs' claim is timely, therefore, depends on the proper characterization of their carryback losses.

For purposes of a claim for investment losses, plaintiffs assert that the seven-year statute of limitations applies because their reported losses are attributable to bad debt and worthless securities from the Annetta Hotel and Century I. I.R.C. § 166(a) allows as a deduction any debt which becomes worthless during the taxable year. However, if the debt is characterized as a nonbusiness debt, "the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 1 year." *Id.* § 166(d)(1)(B). A nonbusiness debt is a debt other than one created, acquired, or incurred within a trade or business. *Id.* § 166(d)(2). Significantly, the concept of "trade or business" within the Internal Revenue Code is one that "falls far short of reaching every income or profit making activity." *Whipple v. Comm'r*, 373 U.S. 193, 201, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963); *see also* 26 C.F.R. § 1.166–5(b)(2) (determination of whether debt is nonbusiness debt is factual).

The allegations in the complaint and the tax returns attached to it evidence that plaintiffs held a shareholder interest in both the Annetta Hotel and Century I, not the least because plaintiffs filed shareholder schedules with their various tax returns. It is well-established that a shareholder interest is a nonbusiness interest for purposes of the bad debt deduction. *Whipple*, 373 U.S. at 202, 83 S.Ct. 1168; *United States v. Generes*, 405 U.S. 93, 107–08, 92 S.Ct. 827, 31 L.Ed.2d 62 (1972) (Marshall, J., concurring) ("[A] shareholder is not entitled to a business bad-debt deduction when a loan which he has made to enhance his stock interest in a corporation goes bad."). Defendant therefore argues that because plaintiffs are merely shareholders, by the terms of the Internal Revenue Code, plaintiffs' loans must be treated as short-term capital losses.[8]

■ The fact that plaintiffs were shareholders does not of itself preclude a finding that their losses properly may be characterized as bad debt. If plaintiffs also maintained a trade or business, if plaintiffs' loans were proximate to that trade or business within the meaning of the Internal Revenue Code, and if plaintiffs' "dominant motivation" in making the loans was their interest in that trade or business, rather than their shareholder interest, they may deduct the losses as bad debt. *See id.* at 103, 92 S.Ct. 827; *e.g., Adelson v. United States*, 12 Cl.Ct. 231, 235 (1987). The complaint fairly alleges that plaintiffs have a trade or business, identified as a partnership. Specifically, plaintiffs identify Mr. Sarovich as their "partner," who maintained the books and records of Century I, the Annetta Hotel, and the Demes Sarovich Partnership. Nevertheless, the mere fact that a trade or business interest may be inferred is not alone sufficient to support the inference that the loans were made proximate to that trade or business or that plaintiffs were dominantly motivated by that business interest when they made the loans. Furthermore, to qualify as a business debt under the circumstances of this case, plaintiffs' partnership must be a trade or business that involves either investing generally or making loans specifically. *Miller v. Comm'r*, 80 T.C.M. (CCH) 152, 154 (2000); *Rollins v. Comm'r*, 32 T.C. 604, 612–13, 1959 WL 1277 (1959) *aff'd* 276 F.2d 368 (4th Cir.1960); *see also Hambuechen v. Comm'r*, 43 T.C. 90, 98–100, 1964 WL 1154 (1964) (legal issue for purposes of bad debt deduction by partner is whether loans more properly characterized as non-eligible capital contribution).

---

**8.** Defendant additionally devotes several pages of its brief to the argument that plaintiffs' losses from the Alsip Bank, Century II, and the real estate loss from the Annetta Hotel cannot be characterized as bad debt. Defendant's motion for a more definite response asked for the basis of plaintiffs' claim for a worthless debt deduc-

tion, including stock owned in each S corporation and advances made to S corporations. Plaintiffs responded that the basis of the bad-debt deduction came from loans made to the Annetta Hotel and to Century I. In other words, plaintiffs do not dispute that their other losses do not qualify as bad debts.

The complaint is devoid of facts to support an inference that plaintiffs' partnership comprised a trade or business in the area of investing or making loans, nor do the facts suggest that plaintiffs made the loans to the Annetta Hotel or Century I pursuant to their trade or business. Indeed, in their response to defendant's motion for a more definite statement, plaintiffs state that loans were made to the Annetta Hotel by "George B. Demes and Helen M. Demes." Pls.' Br. filed Jan. 8, 2002, at 3. The supporting exhibit, a Form 1120 S (1992) from the Annetta Hotel, identifies their payment as a "loan from shareholders." *Id.* Ex. B. Plaintiffs do not allege the capacity by which they the lent money to Century I. In any case, Century I also reported that loan as a shareholder loan. As pleaded, therefore, plaintiffs' loans were loans by shareholders and thus nonbusiness loans under the Internal Revenue Code.[9]

Because plaintiffs' loans were nonbusiness loans, I.R.C. § 166(d)(1)(B) mandates that the losses on those loans be characterized as losses from capital assets. As capital losses, plaintiffs' losses are governed by the terms of I.R.C. § 6511(d)(2)(A) and the three-year statute of limitations found therein. This provision mandates an expiration date of April 15, 1996, for plaintiffs' claim—three years from the statutory due date of their 1992 Return. Plaintiffs did not submit their 1989 Amended Return to the IRS until September 21, 1998. Plaintiffs' complaint is therefore time-barred, and this court lacks jurisdiction over plaintiffs' claim.[10]

### 5. Tolling the statute of limitations

Plaintiffs offer various facts and arguments which appear in the nature of an assertion that the statute of limitations should be tolled. Indeed, the complaint itself pleads plaintiffs' innocence as to the circumstances of the filing of the original returns and places responsibility on Messrs. Ward and Sarovich. The tax code, however, does not recognize innocence as a condition for tolling the statute of limitations: "Fraud on the part of a stranger to a cause of action cannot equitably toll the running of a[tax] limitations period." *Rinaldi*, 30 Fed.Cl. at 169 (citing *Kreiger v. United States*, 539 F.2d 317, 321–22 (3d Cir.1976)); *accord Ambrose v. United States*, 4 Cl.Ct. 352, 355 (1984), *aff'd* 738 F.2d 453 (1984) (unpublished table decision).[11]

9. In response plaintiffs offered only the erroneous argument that *Generes* held that a shareholder interest is a business interest under the Internal Revenue Code. Plaintiffs offered no further facts to illuminate the nature of their trade or business or of the circumstances of the loans so as to support an inference that plaintiffs might be able to prove the loans were made pursuant to business interests and thus eligible as bad-debt deductions. The court appreciates that *pro se* plaintiffs cannot be held to the same standards as practicing attorneys. Nevertheless, *pro se* status does not relieve plaintiffs of their jurisdictional burden, even when the issue of jurisdiction is tied to the merits of plaintiffs' deductions. *See Kelley*, 812 F.2d at 1380. Defendant's challenge to the characterization of plaintiffs' loans as a business interest was plain and put plaintiffs on notice that, in order to survive the jurisdictional challenge, plaintiffs were obligated to provide facts that they made loans to the Annetta Hotel and Century I in a capacity other than as shareholders.

10. Defendant observes that, even if plaintiffs' losses properly are characterized as bad debts, I.R.C. § 1367(b)(3) mandates that the pass-through losses to a shareholder have priority over that shareholder's bad-debt deduction. In other words, pass-through losses first reduce a shareholder's taxable basis, and the bad-debt deduction then is applied to the shareholder's remaining basis, if any. Although defendant claims that the loans made by plaintiffs to the Annetta Hotel and to Century I support an inference that plaintiffs had sufficient basis to claim their allocable share of related pass-through losses, this argument is not developed enough to constitute an alternate basis for dismissing the complaint for failure to state a claim.

11. Plaintiffs cite *Resolution Trust Corp. v. Gravee*, 1995 WL 75373 (N.D.Il. Feb.22, 1995), for the proposition that an unidentified "new regulation" allows taxpayers to claim a refund if they can show the need for a refund to pay for medical care or basic living expenses. *Resolution Trust* is not a tax case, but a claim for a tort and breach of contract brought by a government agency against a private bank. It is not apparent how plaintiffs intend this case to apply to a claim for a tax refund. The issue for decision in that case was whether federal law preempted state law for purposes of plaintiff's claim for mismanagement by the bank's board of directors. *Id.* at *1. To the extent that *Resolution Trust* can be read as holding that the statute of limitations accrues on the date at which a fraud is discovered, it did so only because such was the standard set forth in 12 U.S.C. § 1821(d)(14) (2000), gov-

I.R.C. § 6511(h) does allow for tolling when an individual, suffering medically determinable physical or mental impairment for a continuous period not less then 12 months or which otherwise can be expected to result in death, is unable to manage his financial affairs. This provision, a 1998 amendment to the Internal Revenue Code, does not apply to plaintiffs. The timeliness of plaintiffs' claim expired on April 15, 1996, three years from the statutorily required time of filing. Plaintiffs claim was time-barred before the enactment of the Internal Revenue Code's tolling provision, and that provision cannot be applied retroactively. *See* Internal Revenue Service Restructuring and Reform Act of 1998, Pub.L. No. 105–206 § 3202(b), 112 Stat. 685, 741(this provision "shall not apply to any claim for credit or refund which (without regard to such amendment) is barred by the operation of any law or rule of law (including res judicata) as of the date of the enactment of this Act"); *Wertz v. United States*, 51 Fed.Cl. 443, 449–50 (2002) (I.R.C. § 6511(h) cannot revive claims time-barred upon date of passage of that provision). Although some statutory provisions may by implication allow for the equitable tolling of timeliness requirements, *see Young v. United States*, —— U.S. ——, —— – ——, 122 S.Ct. 1036, 1042–43, 152 L.Ed.2d 79 (2002) (discussing bankruptcy code), I.R.C. § 6511 is not one of them. "Section 6511's detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us that Congress did not intend courts to read other unmentioned, open-ended, 'equitable' exceptions into the statute that it wrote." *Brockamp*, 519 U.S. at 352, 117 S.Ct. 849;

*see also Wertz*, 51 Fed.Cl. at 449 (plaintiffs to whom section 6511(h) tolling does not apply cannot otherwise toll its timeliness provisions).[12]

■ Finally, plaintiffs' briefs can be read to argue that the statute of limitations is tolled because, on April 17, 1999, plaintiffs filed an Application for Taxpayer Assistance Order To Relieve Hardship, which plaintiffs claim entitles them to a refund. According to I.R.C. § 7811(a), upon such an application, the National Taxpayer Advocate may issue a Taxpayer Assistance Order ("TAO") if, in his determination, the taxpayer is suffering a significant hardship due to the administration of the Internal Revenue Code. This provision does not go to the tolling of the statute of limitations in court, but rather confers the IRS with discretion to effect tolling upon a taxpayer's request. Plaintiffs therefore cannot sue in a court for a refund under this provision, nor can the court use it as a basis to toll the statute of limitations in plaintiffs' case. *See* 26 C.F.R. § 301.7811–1(c)(3); *Inman v. Comm'r*, 871 F.Supp. 1275, 1278 (E.D.Ca.1994). Furthermore, although a court may entertain a claim for the violation of a TAO, no provision in the Internal Revenue Code provides for judicial review of a denial of a request for a TAO in the first instance. *See Wilkes v. United States*, 2000 WL 1367885, *8, 2000 U.S. Dist. LEXIS 12430, *23–24 (M.D.Fla. July 21, 2000); *Low v. United States*, 1997 WL 1039237, *4, 1997 U.S. Dist. LEXIS 10206, *12–13 (S.D.Cal. June 27, 1997); *White v. Comm'r*, 899 F.Supp. 767, 773 (D.Mass.1995).

erning the agency's claims, and within the context of explaining that, under Illinois law, it cannot be said that the statute of limitations begins to run on the date the bank went into receivership. *Id.* at *4–5. The fact that other statutory schemes may or may not toll a cause of action does not govern the instant case. Similarly, the fact that the circumstances in *Resolution Trust* allowed for a cause of action for breach of implied contract created by fiduciary duty is of no moment when plaintiffs in the instant case have not alleged any fact, such as the existence of a fiduciary duty, to support their contract claim.

**12.** In its reply defendant noted that plaintiffs in any case did not contend that they were finan-

cially disabled within the meaning of I.R.C. § 6511(h). Plaintiffs subsequently filed a Motion for Leave To Supplemental [sic] Memorandum Plus an Attachment. With their motion plaintiffs submitted an "affidavit," signed by plaintiffs but not witnessed, in which plaintiffs attest that an unnamed affiant has been unable to manage his financial affairs by reason of a medically determined physical impairment and therefore does contend that he was financially disabled within the meaning of the statute. As discussed above, plaintiffs cannot toll the statute of limitations based on their financial disability, and the supplement to the record going to the issue of such financial disability would add nothing relevant to the issues raised by defendant's motion.

## CONCLUSION

Accordingly, based on the foregoing,

1.  Defendant's motion to dismiss Counts I and IV of the complaint is granted, and the Clerk of the Court shall dismiss those counts of the complaint without prejudice for lack of jurisdiction.

2.  Defendant's motion to dismiss Counts II and III is granted, and the Clerk of the Court shall dismiss those counts of the complaint for failure to state a claim upon which relief can be granted.

3.  Plaintiffs' Motion for Leave To Supplemental [sic] Memorandum Plus an Attachment is denied as moot.

**IT IS SO ORDERED.**