Keith Bennett **JOHNSON**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 07–672 C.

United States Court of Federal Claims.

Dec. 20, 2007.

Keith Bennett Johnson, Terre Haute, Indiana, pro se.

Brian Thomas Edmunds, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

SWEENEY, Judge.

Before the court is plaintiff's *pro se* Complaint ("Complaint" or "Compl."), defendant's Motion to Dismiss for Lack of Jurisdiction ("Def.'s Mot.") under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiff's Response to Defendant's Motion to Dismiss ("Response" or "Pl.'s Resp.") and two affidavits, a "Negative Averment" ("Pl.'s Aff. A") and "Affidavit of Truth" ("Pl.'s Aff. B"), accompanying plaintiff's Response, and Defendant's Reply ("Def.'s Reply"). Plaintiff, a federal inmate, seeks relief for the alleged breach of an implied-in-fact contract between him and the United States. Plaintiff also submits a Motion for Leave to Proceed *In Forma Pauperis*, ("Pl.'s Mot."). Defendant, the United States of America, argues that plaintiff fails to articulate a claim within the jurisdiction of the United States Court of Federal Claims ("Court of Federal Claims"). For the reasons set forth below, the court grants defendant's motion to dismiss based upon this court's lack of subject matter jurisdiction and denies plaintiff's motion to proceed *in forma pauperis*.

## I. BACKGROUND

Plaintiff, Keith Bennett Johnson, is currently incarcerated at a federal prison in Terre Haute, Indiana.[1] On September 17, 2007, plaintiff filed a *pro se* Complaint in this court.[2] In his Complaint, plaintiff alleges that he is entitled to judgment based upon an implied-in-fact contractual relationship with defendant. Compl. 1. *But see* Pl.'s Mot. ¶ 12 (indicating that the nature of his action is to challenge his incarceration); Ex. 3 ("My intent is to be paid and to be released from my UNCONSTITUTIONAL incarceration.").

The exhibits accompanying plaintiff's Complaint elaborate upon, to a limited degree, the nature of this action. Plaintiff claims that defendant entered into an implied-in-fact contractual relationship with him by operation of his certificate of live birth issued by the State of Illinois on April 21, 1956, and the United States Constitution. Ex. 1 ¶¶ 2, 3; Pl.'s Aff. B ¶ 2. Utilizing a maritime metaphor throughout his filings, plaintiff refers to himself as a "vessel" cast into the "stream of life" by the act of his birth. Ex. 1 ¶ 3; *see also* Pl.'s Aff. B ¶ 2 ("Mrs. Johnson on April 21st, 1956[,] did by the act of her 'water' breaking, push out (launch) a new 'vessel' into the 'stream of life'. By her act of applying for 'title' (birth certificate)[,] the contract was entered."). Plaintiff claims that his vessel "has been in the revenue stream in excess of 51 years and has been maintained, repaired, and provisioned, as well as provided all its necessaries, by the owner/lender," has "been available at all times for public service," and has "never been out of commis-

---

1. An unpublished opinion of the United States Court of Appeals for the Seventh Circuit, in which the court granted plaintiff's counsel's motion to withdraw and dismissed plaintiff's appeal, indicates that plaintiff was charged with bank fraud, 28 U.S.C. § 1334 (2000), and wire fraud, *id.* § 1343, and was sentenced to forty-six months of imprisonment plus five years of supervised release. *United States v. Johnson*, 155 Fed. Appx. 896, 896 (7th Cir.2005).

2. Attached to plaintiff's Complaint are several exhibits, including: (1) an affidavit "in support of matter before the Court of Federal Claims" executed on September 11, 2007 ("Ex. 1"); (2) a document entitled "Creditor's Accommodation for Debtor (financial favor)" ("Ex. 2"); (3) a letter from plaintiff to Henry M. Paulson, Jr., Secretary of the Treasury, dated August 24, 2007 ("Ex. 3"); (4) a document entitled "Notice of Default & Demand for Payment" dated August 30, 2007 ("Ex. 4"); (5) a copy of a "notice of claim of lien" ("Ex. 5"); and (6) a copy of a second, undated affidavit containing handwritten notations that the original was furnished to the Secretary of the Treasury ("Ex. 6").

sioned service since launched." Ex. 4; *see also* Ex. 1 ¶ 8 (alleging that plaintiff "maintained, repaired, and provisioned this 'vessel' while in the revenue stream"). According to plaintiff, defendant has neither "reimbursed any of the costs" plaintiff incurred to maintain his vessel nor "shared any of the revenue" derived therefrom with him. Ex. 4; *see also* Ex. 1 ¶ 9 (alleging that defendant "fraudulently enter[ed] into 'use' of an asset . . . without renumeration [sic] of expenses"); *id.* ¶ 4 (alleging that defendant unlawfully used his vessel "as an asset, to be pledged, encumbered, and removed" in violation of bankruptcy statutes); Pl.'s Resp. ¶ 5 (claiming that defendant "failed to pay . . . for the provisioning, repair, and maintenance, of the 'vessel' while it has been contractually under charter"). As a result, plaintiff claims that defendant knowingly and intentionally defrauded him, Ex. 1 ¶¶ 4, 5, and that defendant's breach of its contractual obligations to him constitute treason, *id.* ¶¶ 2, 15.

Although plaintiff asserts that his action is grounded in "matters which are criminal in nature," plaintiff maintains that he "does not wish to see [defendant] prosecuted." Compl. 1. Rather, plaintiff seeks monetary relief in the amount of $250 million, Ex. 1 ¶ 10, which he asserts constitutes monies owed to him as a creditor of a maritime lien. Compl. 1; Ex. 1 ¶¶ 10, 12. As part of the relief sought, plaintiff enumerates the following: two jet aircraft; a yacht; two Mercedes Benz and one Rolls Royce automobiles; issuance of two consumer debit cards with limits exceeding $50,000; and a $75,000 cash deposit into his bank account. Ex. 2 ¶¶ 1–5; *cf.* Ex. 4 (demanding payment in the amount of $50 million). Plaintiff claims entitlement to such relief by virtue of his maritime lien and pursuant to "Public Law 73–10." Compl. 1; see also Pl.'s Resp. 2 (indicating that defendant "was forced into bankruptcy by its creditors" in 1933).

**3.** While the Court of Federal Claims is not considered a "court of the United States" within the meaning of title 28 of the United States Code, the court has jurisdiction to grant or deny an application to proceed *in forma pauperis.* *See* 28 U.S.C. § 2503(d) (2000) (deeming the Court of Federal Claims to be "a court of the United States" for the purposes of section 1915); *see*

## II. MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

■ Plaintiff has filed a motion for leave to proceed *in forma pauperis.* Pursuant to 28 U.S.C. § 1915 (2000), courts of the United States are authorized to waive filing fees or security under certain circumstances.[3] The statute provides, in relevant part:

(a)(1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress.

(a)(2) A prisoner seeking to bring a civil action or appeal a judgment in a civil action or proceeding without prepayment of fees or security therefor, in addition to filing the affidavit filed under paragraph (1), shall submit *a certified copy* of the trust fund account statement (or institutional equivalent) for the prisoner *for the 6–month period immediately preceding the filing of the complaint* or notice of appeal, obtained from the appropriate official of each prison at which the prisoner is or was confined.

28 U.S.C. § 1915(a)(1)-(2) (emphases added). Where the party seeking to proceed *in forma pauperis* is a prisoner, the court engages in a two-part inquiry under section 1915. First, it "reviews plaintiff's financial statement to determine whether he is financially eligible for waiver of the filing fee." *Matthews,* 72 Fed.Cl. at 277 (citing 28 U.S.C. § 1915(a)-(b)). Second, it reviews plaintiff's history of

*also Matthews v. United States,* 72 Fed.Cl. 274, 277–78 (2006) (recognizing that Congress enacted the Court of Federal Claims Technical and Procedural Improvements Act of 1992, authorizing, *inter alia,* the court to adjudicate applications to proceed *in forma pauperis* pursuant to section 1915).

suit in the federal courts to determine whether plaintiff has, "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted...." 28 U.S.C. § 1915(g).

The court evaluates plaintiff's financial resources in order to determine whether plaintiff satisfies the technical requirements of Section 1915. *See Matthews,* 72 Fed.Cl. at 277 (indicating that a court must first determine whether a plaintiff is financially ineligible for waiver of the filing fee). The threshold for a motion to proceed *in forma pauperis* is not high. *Fiebelkorn v. United States,* 77 Fed.Cl. 59, 62 (2007). In his motion, plaintiff submitted an affidavit stating that he is a prisoner at a federal penitentiary in Terre Haute, Indiana, that he has no assets other than his inmate trust account, and that the nature of his action is based upon his status as an "unconstitutionally, illegally, unlawfully detained citizen, and in servitude to the government...." Pl.'s Mot. ¶¶ 1, 2, 5, 8, 12. Appended to plaintiff's motion are two computer printouts entitled "Inmate Inquiry" and "Deposits," which indicate plaintiff's inmate account balance as of April 2007 and detail plaintiff's account deposit and withdrawal history for the period spanning July 2006 through April 2007, respectively.[4] Plaintiff's lack of financial resources indicates that he is "unable to pay such fees" under section 1915(a)(1).[5]

Plaintiff's "Inmate Inquiry" and "Deposits" computer printouts, however, fail to satisfy the requirements of section 1915(a)(2). First, although plaintiff signed and dated both documents, neither contains any certification by the "appropriate official of each prison at which the prisoner is ... confined." 28 U.S.C. § 1915(a)(2); *see also Stamps v. United States,* 73 Fed.Cl. 603, 605 (2006) (determining that, where plaintiff submitted an illegibly signed copy of a computer print-

out of what appeared to constitute plaintiff's inmate banking history, plaintiff failed to comply with section 1915(a)(2) because the document lacked language of certification). Second, the two computer printouts document plaintiff's account balance as of April 17, 2007. Section 1915(a)(2) requires that plaintiff furnish an account statement "for the 6–month period immediately preceding the filing of the complaint...." 28 U.S.C. § 1915(a)(2). Plaintiff executed his application on September 11, 2007, and he filed his motion with the Court of Federal Claims on September 17, 2007. In order to comply with the statutory requirements of section 1915(a)(2), plaintiff needed to furnish a certified copy of his account information for the period beginning with, not ending in, April 2007. The court has no information before it concerning plaintiff's finances for the six-month period immediately preceding the filing of plaintiff's Complaint. Thus, even if plaintiff's computer printouts contained the appropriate certifications, they nonetheless fail to document the appropriate six-month period required under the statute.

Because plaintiff has failed to satisfy the statutory requirements set forth in section 1915(a)(2), the court need not reach the question of whether plaintiff's motion complies with section 1915(g). Accordingly, the court denies plaintiff's motion to proceed *in forma pauperis.* Although the court finds that plaintiff submitted insufficient documentation under the statute for the court to grant plaintiff's motion to proceed *in forma pauperis,* plaintiff's Complaint is, as discussed below, jurisdictionally defective and would be dismissed from this court in any event.

### III. JURISDICTION

#### A. *Pro Se* Plaintiff

The Court of Federal Claims holds pleadings of a *pro se* plaintiff to less stringent standards than litigants represented by counsel. *Haines v. Kerner,* 404 U.S. 519, 520, 92

---

4. Although plaintiff's motion does not specifically reference either computer printout attached thereto, the court assumes that plaintiff submitted both in an effort to satisfy the requirements for proceeding *in forma pauperis* set forth in section 1915.

5. The two computer printouts indicate that plaintiff's account balance was $26.84 as of April 18, 2007.

S.Ct. 594, 30 L.Ed.2d 652 (1972). Courts have "strained [their] proper role in adversary proceedings to the limit, searching ... to see if plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969). Although plaintiff's pleadings are held to a less stringent standard, such leniency "with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007); *see also Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed.Cir.1987) ("[A] court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only."); *Bernard v. United States*, 59 Fed.Cl. 497, 499, *aff'd*, 98 Fed.Appx. 860 (Fed.Cir.2004) (noting that *pro se* plaintiffs are not excused from satisfying jurisdictional requirements). As the Court of Federal Claims stated in *Demes v. United States*, 52 Fed.Cl. 365 (2002), "[w]hile a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate." *Id.* at 369.

### B. Standard of Review

Subject matter jurisdiction is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case." *Matthews*, 72 Fed.Cl. at 278. Subject matter jurisdiction may be challenged at any time by the parties, by the court *sua sponte*, or on appeal. *Folden v. United States*, 379 F.3d 1344, 1354 (Fed.Cir.2004), *cert. denied*, 545 U.S. 1127, 125 S.Ct. 2935, 162 L.Ed.2d 865 (2005). When considering an RCFC 12(b)(1) motion, the burden of establishing the court's subject matter jurisdiction resides with the party seeking to invoke it. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). The court "consider[s] the facts alleged in the complaint to be true and correct." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir. 1995) (recognizing the court's obligation to "assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor").

A plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence, *Reynolds*, 846 F.2d at 748, and needs only set forth a *prima facie* showing of jurisdictional facts to survive a motion to dismiss, *Raymark Indus., Inc. v. United States*, 15 Cl.Ct. 334, 338 (1988). Where a defendant or the court challenges jurisdiction, "the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction." *Murphy v. United States*, 69 Fed.Cl. 593, 600 (2006). The court may consider matters outside the pleadings when examining jurisdiction. *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583–84 (Fed.Cir. 1993); *see also Reynolds*, 846 F.2d at 748 ("If a motion to dismiss for lack of subject matter jurisdiction ... challenges the truth of the jurisdictional facts alleged in the complaint, the district court may consider relevant evidence in order to resolve the factual dispute."). If the court finds that it lacks subject matter jurisdiction, then it must dismiss the claim. *Matthews*, 72 Fed.Cl. at 278; *see also* RCFC 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

### C. The Tucker Act

The Court of Federal Claims is a court of limited jurisdiction. *Jentoft v. United States*, 450 F.3d 1342, 1349 (Fed.Cir.2006) (citing *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). The scope of this court's jurisdiction to entertain claims and grant relief depends upon the extent to which the United States has waived its sovereign immunity. *King*, 395 U.S. at 4, 89 S.Ct. 1501. In "construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." *Fid. Constr. Co. v. United States*, 700 F.2d 1379, 1387 (Fed.Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 103 (1983). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *King*, 395 U.S. at 4, 89 S.Ct. 1501. Unless Congress consents to a cause of action against the United States, "there is no jurisdiction in the Court of

Claims more than in any other court to entertain suits against the United States." *United States v. Sherwood*, 312 U.S. 584, 587–88, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).

The Tucker Act, 28 U.S.C. § 1491 (2000), confers upon the Court of Federal Claims jurisdiction to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id.* § 1491(a)(1). Although the Tucker Act waives the sovereign immunity of the United States for claims for money damages, it "itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Greenlee County, Ariz. v. United States*, 487 F.3d 871, 875 (Fed.Cir.2007) (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.2005)). The separate source of substantive law must constitute a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed.Cir.1994). "[I]n order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States*, 17 Cl. Ct. 475, 479 (1989) (citations omitted), *aff'd,* 904 F.2d 45 (Fed.Cir.1990); *see also United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (stating that a "grant of a right of action must be made with specificity"). Additionally, a plaintiff "who seeks redress in the Court of Federal Claims must present a claim for 'actual, presently due money damages from the United States.'" *Terran v. Sec'y of HHS*, 195 F.3d 1302, 1309 (Fed.Cir.1999) (quoting *King*, 395 U.S. at 3, 89 S.Ct. 1501).

## IV. DISCUSSION

■ While plaintiff's Complaint and accompanying exhibits assert that this court possesses jurisdiction over plaintiff's claims under the Tucker Act, plaintiff fails to allege that defendant violated a separate source of substantive law that can be construed as a money-mandating constitutional provision, statute, regulation, or contract entitling him to money damages. *See Terran*, 195 F.3d at 1309 ("[A] plaintiff seeking recovery against the Government in the Court of Federal Claims must point to a money-mandating constitutional provision, statute, regulation, or contract with the United States affording it a right to money damages."). Plaintiff's Complaint and accompanying exhibits cite no specific, money-mandating provision of the Constitution that would vest this court of jurisdiction. Instead, plaintiff either generally construes the Constitution as a contract between him and defendant, Ex. 1 ¶ 2, or claims that defendant's "usage without renumeration [sic]" of his vessel "would be illegal and against the Constitution" because it constitutes involuntary servitude and violates the Thirteenth Amendment, Pl.'s Resp. ¶ 8. This court, however, cannot entertain claims brought under the Thirteenth Amendment because it does not mandate the payment of money damages for its violation. *Humphrey v. United States*, 52 Fed.Cl. 593, 598 (2002), *aff'd*, 60 Fed.Appx. 292 (Fed.Cir.2003); *see also Carter v. United States*, 228 Ct.Cl. 898, 900, 902 (1981) (dismissing Thirteenth Amendment liberty claim for lack of jurisdiction). Therefore, plaintiff has failed to allege that any money-mandating provision of the Constitution confers jurisdiction upon this court.

Plaintiff also fails to establish that he is entitled to relief based upon a money-mandating statute or regulation. Notwithstanding plaintiff's claim that defendant intentionally defrauded him as a creditor, none of the bankruptcy statutes plaintiff cites, Ex. 1 ¶ 5 (referencing 28 U.S.C. §§ 3302, 3304), mandate payment to plaintiff such that Tucker Act jurisdiction exists in this court. Additionally, plaintiff's reliance upon either Public Law 73–10, 48 Stat. 112, 113 (1933), wherein Congress suspended the gold standard, *see* Compl. 1; Ex. 2, or the Sarbanes–Oxley Act of 2002, Pub.L. No. 107–204, 116 Stat. 745 (codified as amended in scattered sections of

11, 15, 18, 28, and 29 U.S.C.), *see* Pl.'s Mot. 2; Pl.'s Aff. A ¶ 10; Pl.'s Aff. B ¶ 3, as a money-mandating provision is erroneous because they are not money-mandating provisions. Rather, these provisions ensure valuation of currency and establish mandatory disclosures under federal securities laws, respectively. Furthermore, to the extent that plaintiff challenges his incarceration, *see, e.g.*, Ex. 2 ¶ 6 (referencing his "illegal incarceration"); Ex. 3 ("My intent is to be paid and to be released from my UNCONSTITUTIONAL incarceration."); Pl.'s Mot. ¶ 12 (indicating that the nature of his action is to challenge his incarceration), the Court of Federal Claims lacks criminal or habeas corpus jurisdiction. *See Ledford v. United States*, 297 F.3d 1378, 1381 (Fed.Cir.2002) ("[T]he habeas statute does not list the Court of Federal Claims among those courts empowered to grant a writ of habeas corpus, and the trial court therefore is without power to entertain [plaintiff's] petition."); *Burman v. United States*, 75 Fed.Cl. 727, 729 (2007) (stating that false imprisonment, as a tort, falls outside the scope of the court's jurisdiction).

Plaintiff also fails to establish the existence of an implied-in-fact contract with defendant. An implied-in-fact contract "is one 'founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.' " *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed.Cir.1998) (quoting *Balt. & Ohio R.R. Co. v. United States*, 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923)). An implied-in-fact contract, like an express contract, requires "(1) mutuality of intent to contract; (2) consideration; and, (3) lack of ambiguity in offer and acceptance." *Id.* (quoting *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir.1990)). Additionally, a fourth requirement is present when the United States is a party: "The government representative whose conduct is relied upon must have actual authority to bind the government in contract." *Id.* Plaintiff has not established the existence of any of these requirements. Furthermore, to the extent that plaintiff alleges the existence of an implied-in-law contract, the Court of Federal Claims lacks jurisdiction. *Hercules Inc.*

*v. United States*, 516 U.S. 417, 423, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996) ("We have repeatedly held that ... jurisdiction [in the Court of Federal Claims] extends only to contracts either express or implied in fact, and not to claims on contracts implied in law.").

Finally, despite plaintiff's metaphorical invocation of maritime law throughout his submissions, Pl.'s Aff. A ¶ 6, the Court of Federal Claims lacks admiralty jurisdiction. *Sw. Marine of S.F., Inc. v. United States*, 896 F.2d 532, 534 (Fed.Cir.1990) ("Jurisdiction over matters arising in admiralty, including maritime contracts, has traditionally been with the federal district courts."); *Alaska Barge & Transp., Inc. v. United States*, 179 Ct.Cl. 216, 373 F.2d 967, 970 (1967) ("In our system of Federal courts, jurisdiction over maritime matters is vested exclusively in the district courts, and the Court of Claims is precluded from entertaining such actions, even though they might otherwise be cognizable under the terms of the Tucker Act."). Additionally, even if the Court of Federal Claims possessed admiralty jurisdiction, plaintiff cannot properly be construed as a maritime vessel. The definition of a "vessel," which "has remained virtually unchanged from 1873 to the present," *Stewart v. Dutra Constr. Co.*, 543 U.S. 481, 490, 125 S.Ct. 1118, 160 L.Ed.2d 932 (2005), includes "every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3 (2000). Plaintiff clearly does not meet this definition. Therefore, defendant's motion to dismiss must be granted.

## V. CONCLUSION

Accordingly, for the reasons stated above, defendant's motion to dismiss is **GRANTED**. Plaintiff's motion to proceed *in forma pauperis* is **DENIED**, and plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.** The Clerk of the Court is directed to enter a judgment in favor of defendant.

**IT IS SO ORDERED.**