Eleanor SEBASTAIN, Lewis Hinson, Robert Lowery, Charles W. Newhouser, Dennis Reynolds, Herbert Brown, Rudolph Singleton, James K. Rogers, Blane H. Lawson, Louie C. Hinson, Woody Nesbitt, Marion Pearson, Ronald D'Anella, Walter Ewing, Leonard Bartlette and Coalition of Retired Military Veterans, Plaintiffs–Appellants,

v.

UNITED STATES, Defendant–Appellee.

No. 98–1263.

United States Court of Appeals, Federal Circuit.

Aug. 9, 1999.

Michael J. Kator, Kator, Scott & Parks, of Washington, DC, argued for plaintiffs-appellants.

E. Roy Hawkens, Attorney, Appellate Staff, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief was Barbara C. Biddle, Attorney. Of counsel on the brief was Lt. Col. Douglas Mickle, Office of the Judge Advocate General, U.S. Army Litigation Division, Department of the Army, of Arlington, Virginia.

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and MICHEL, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The district court dismissed a complaint by retired career military personnel seeking just compensation for the government's alleged taking of their purported right to lifetime free medical care. We affirm.

I

The appellants are retired career members of the military service, surviving spouses of deceased members, and an association of such persons (collectively, the Retirees). They filed a complaint in the United States District Court for the District of South Carolina seeking (1) a de-

claratory judgment that the government had taken their property without just compensation and (2) just compensation not exceeding $10,000 for each individual plaintiff.

The complaint alleged that "[i]t was the practice of the military departments, stated and restated many times in service regulations, to use the promise of continued medical and dental care as a recruitment and retention tool"; that pursuant to this practice, each retiree was "promised, as an inducement to become a career military service member, that upon retirement his military health care benefits would continue, including dental care and prescription drugs, without cost to him or his survivors, so long as he and his dependents lived"; that the government "[i]nitially ... did in fact live up to this promise and provided continued medical benefits to plaintiffs and other military retirees, their dependents and survivors without cost," but that "[i]n October 1995, the Secretary of Defense promulgated regulations implementing 'TRICARE,' a comprehensive redesign of the health benefits available to military retirees and their families" and this regulatory program "dramatically reduce[d] the value of medical benefits that are provided to military retirees."

The complaint further alleged that "[c]ontinued medical care was ... a component of the compensation provided to plaintiffs as consideration for their commitment to continue with military service through retirement"; that "[t]hrough its implementation of TRICARE, [the government] has substantially diminished the coverage provided to military retirees and the value of that coverage"; and that the government's "actions in diminishing the value of plaintiffs' compensation is a taking of property for which plaintiffs' are entitled to just compensation."

On the government's motion, the district court dismissed the complaint. The court ruled that it lacked jurisdiction to grant the requested declaratory judgment – the Retirees do not challenge this ruling. With regard to the individual claims, the court concluded that they involved "a challenge to the decision of the military departments as to the manner in which to allocate health care resources, and ... such military decisions are non-reviewable." Alternatively, the court held that the complaint did not state a claim upon which relief could be granted. After concluding that no statute or regulation granted the Retirees a right to the health benefits they claimed, the court stated:

> In the absence of any statutory or regulatory entitlement upon which to base their alleged property interest, plaintiffs' claim is founded only on promises that were made to retired service members at the time they enlisted, or agreed to continue their military careers. It is well established, however, that such representations create no legal interest. [citations omitted]
>
> Accordingly, the court finds that plaintiffs have failed to show a property interest in health care benefits, and their claim for damages resulting from an alleged taking must be dismissed on this ground as well.

## II

The sole ground upon which the Retirees seek damages for the government's failure to provide free lifetime medical care is that the government's conduct constituted a taking of their property. They do not state precisely what action by the government they contend constituted the taking, although the complaint suggests that it was the "implementation of the TRICARE program." The "property" that the government allegedly took was a purported "right" to free medical care after retirement which, they assert, constituted deferred compensation for their military service.

A. The right to military pay "must be determined by reference to the [governing] statutes and regulations ... rather than to ordinary contract principles." *United States v. Larionoff,* 431 U.S. 864, 869, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977) (footnote omitted). The same principle covers retirement benefits, which include medical care. *See Andrews v. United States,* 175 Ct.Cl. 561, 563 (1966) (military "officers have no vested or contractual right to any particular amount of retired pay"); *Zucker v. United States,* 758 F.2d 637, 640 (Fed.Cir.1985) ("entitlement to retirement benefits must be determined by reference to the statute and regulations governing these benefits, rather than to ordinary contract principles" (civilian employees)). We therefore look to the governing statutes and regulations to ascertain whether the Retirees have an unconditional right to lifetime free medical care.

Section 1074(b) of Title 10, a statute enacted in 1956 which governs the provision of medical and dental care to active duty and retired members of the Armed Forces and which the Retirees describe as "the predicate of their claims," states that

> a member or former member of a uniformed service who is entitled to retired or retainer pay, or equivalent pay may, upon request, be given medical and dental care in any facility of any uniformed service, subject to the availability of space and facilities and the capabilities of the medical and dental staff.

Far from granting the Retirees the unconditional and absolute right to medical and dental care that they claim, this provision merely states that a retiree "may" upon request be given such care, "subject to the availability of space and facilities and the capabilities of the medical and dental staff." In other words, instead of having an absolute right to such medical and dental service, they may be given that service subject to its availability. Nothing in the statute authorized recruiters to promise such care unconditionally.

Some of the Retirees, however, claim that their right to health care originated before Congress enacted Section 1074(b) in 1956. Prior to that date, the controlling statute was 5 U.S.C. § 301, "a 'housekeeping statute,' authorizing ... 'rules of agency organization, procedure, or practice' as opposed to 'substantive rules.'" *Chrysler Corp. v. Brown,* 441 U.S. 281, 310, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (footnote omitted). It provided that "[t]he head of [a] ... military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, paper, and property." 5 U.S.C. § 301. That provision stated nothing about health care.

Nor did the various regulations dealing with health care for military retirees upon which the district court relied provide an absolute and unconditional right to care. To the contrary, for many years they have made clear that whether a retiree could receive medical care depended on the fulfillment of various conditions. It suffices to mention a few illustrative examples.

From 1924 until 1950 Army regulations provided that "[t]he admission of retired personnel on inactive status will be limited to cases which in the judgment of the commanding officer of the hospital will be benefited by hospitalization for a reasonable time." Army Regulation 40–590 ¶ 6b(1) (1935). A superseding regulation continued this grant of discretion to the commanding officer, *see* Army Regulation 40–506 ¶ 5e (1950), and also provided that "[t]he furnishing of [medical] care to other than personnel [on extended active duty and on the temporary disability retired list] will be on a 'when adequate facilities are available' basis," *id.* at ¶ 3. Before

1951, the Air Force followed the Army's regulations, see *Schism v. United States,* 19 F.Supp.2d 1287, 1293 (N.D.Fla.1998), but that year, it promulgated Air Force Regulation 160–73 ¶ 14h (1951), which stated that "[t]he hospitalization of retired inactive Air Force personnel ... will be limited to cases which in the judgment of the hospital commander will be benefited by hospitalization for a reasonable length of time."

Navy regulations required "all persons of the Navy and Marine Corps, on the retired and active lists" to seek "authority for admission" from "the Surgeon General of the Navy" or "a naval medical officer." Navy Regulation 1920 § 12 Article 1830 (1927). The 1922 Manual of the Medical Department of the United States Navy (the Manual) provided that "[o]fficers and enlisted men of the Navy and Marine Corps and members of the Nurse Corps, on the active list; officer and enlisted men of the Naval Reserve Force, when on active service with the Navy; officer and enlisted men of the Navy and Marine Corps on the retired list; and pensioners are entitled to naval hospital care, in the order mentioned, when room is available." Manual § 13 ¶ 1906 (1922). The 1939 Manual provided that "[r]etired officers and enlisted men, inactive, are not entitled to civilian medical and hospital treatment at Government expense. They are entitled to treatment in naval hospitals and by naval officers when available upon application." Manual ch. 21 ¶ 3168 (1939). Section 4132.1 of the 1945 Manual, as amended in 1947, stated that "[a] retired officer of the Regular Navy or Marine Corps not on active duty shall, if in need of hospital care, be admitted to any navy hospital upon the application of the individual and the presentation of suitable identification."

Nothing in these regulations provided for unconditional lifetime free medical care or authorized recruiters to promise such care as an inducement to joining or continuing in the armed forces. While the Retirees argue that the abovementioned Section 4132.1 gave those of them who served as officers in the Navy and Marine Corps the right to free unconditional medical care, we cannot agree. The Manual provided guidelines for the Navy's Medical Department, but did not create any right in such officers to the free unconditional lifetime medical care they claim. It related only to hospital care, not the broader services that these Retirees seek, and covered only the period when it was in effect. In any event, in view of the general pattern of the military regulations that provides medical care to retirees only when facilities and personnel were available, we decline to read into the Manual the creation of such an enduring and broad right to unconditional free lifetime medical care.

In sum, we conclude that the Retirees have not shown that they have a right to the health care they say was "taken" by the government. Since the basic premise of their claim fails, their taking claim necessarily also fails.

■ B. The Retirees reiterate throughout their briefs that the military, after inducing them to join or remain in the armed forces by promising them free lifetime medical care, improperly and unfairly reneged on those promises. The argument basically is that, as a matter of policy and fairness, the government should furnish the free medical care it promised to provide. That argument, however, should be addressed to Congress, not to the courts. As our predecessor court stated, in rejecting a comparable taking claim by military retirees:

The arguments in this regard so ably expressed in plaintiffs' briefs should be presented to Congress instead of [the judiciary]. Congress has the power and authority under the Constitution to establish a system for the payment of retired pay [for military service mem-

bers] and to change the system from time to time as was done in this case. We understand and appreciate the dissatisfaction of the plaintiffs with the change in the retirement pay system, as they have rendered long and faithful service to our country in time of peace and war. However, if they are to get any relief, it must come from Congress, as this is not within [a court's] jurisdiction.

*Abbott v. United States,* 200 Ct.Cl. 384, 390 (1973).

C. The Retirees also contend that *Larionoff* supports their claim. That case involved a statute that authorized the military services to pay a "variable re-enlistment bonus" to servicemen with a "critical military skill." *Larionoff,* 431 U.S. at 866, 97 S.Ct. 2150. During his initial enlistment, the plaintiff Johnson, who had a critical skill, was promised such a bonus if he would agree to extend his enlistment, which he did. *See id.* at 879, 97 S.Ct. 2150. Prior to the beginning of his extended term of service and before he had received his bonus, however, Congress repealed the bonus it had authorized and provided a different bonus. *See id.* at 878., 97 S.Ct. 2150 The military then refused to pay Johnson the bonus in effect at the time he agreed to extend his enlistment. He filed suit for the bonus. The Court reasoned:

> by entering an agreement to extend his enlistment, [Johnson] became entitled to receive at some future date a VRB at the award level then in effect (provided that he met the other eligibility criteria). Thus, unless Congress intended, in repealing the VRB program in 1974, to divest Johnson of the rights he had already earned, and constitutionally could do so, the prospective repeal of the program could not affect his right to receive a VRB, even though the date on which the bonus was to be paid had not yet arrived.

Of course, if Congress had such an intent, serious constitutional questions would be presented.... In view of these problems, we would not lightly conclude, in the absence of a clear expression of congressional intent, that in amending [the provision at issue] and establishing a new bonus system, Congress intended to affect the rights of those service members who had extended their enlistments and become entitled to receive VRB's.

431 U.S. at 879, 97 S.Ct. 2150. The Court discerned no such intention on the part of Congress and held that Johnson was entitled to the bonus in effect at the time he agreed to extend his enlistment. *See id.* at 879–80, 97 S.Ct. 2150.

*Larionoff* is distinguishable from the present case in a critical respect. The statute there explicitly authorized the services to provide the bonus. In the present case, in contrast, neither the statutes nor the regulations authorized the military to promise retirees free lifetime medical care. Although there is some broad language in *Larionoff,* the actual holding is quite narrow, namely, that the statute repealing the variable reenlistment bonus did not apply to bonuses promised and extension enlistments made, prior to the statute's effective date.

D. Since we conclude that the district court properly dismissed the complaint for failure to state a claim upon which relief could be granted, we need not consider the district court's other ground of dismissal – that the Retirees' claim involved the nonjudicially reviewable issue of the military's allocation of its health care resources.

### III

After the district court had dismissed their complaint, the Retirees filed a motion to alter or amend the judgment. In this motion, the Retirees first contend-

ed that the superseded military regulations upon which the district court relied, discussed above, were "matters outside the pleadings" and that the district court therefore was required to treat the government's motion to dismiss as one for summary judgment, which would have permitted them to obtain discovery before the court decided the motion. *See* Fed. R.Civ.P. 12(b). In deciding whether to dismiss a complaint under Rule 12(b)(6), the court may consider matters of public record. *See Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir.1994); *United States v. Provident Nat'l Bank*, 259 F.Supp. 373, 376 (E.D.Pa.1966) (taking judicial notice of a statute not mentioned in the complaint); Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed.1990). The district court here correctly concluded that the materials at issue were "historical regulations, since superseded, which are matters of public record" and properly denied this portion of the Retirees' motion.

The Retirees also sought to amend the complaint "to include a claim of equitable estoppel" to reflect the court's "recogni[tion]" of the "defendant's moral obligation to provide lifetime medical benefits to plaintiffs." The district court denied this request without discussion.

Motions to amend the complaint usually are made while the case is pending before the district court, to reflect developments in the district court proceedings. Here, however, the case in the district court was over when the Retirees sought to amend. In that situation it would normally require an exceptional showing to justify the filing of an amended complaint. We review the district court's refusal to grant leave to amend for abuse of discretion. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 940 (4th Cir.1995).

Neither in their motion to amend nor before this court have the Retirees made

such a showing. They provide no explanation or justification for their failure to raise the point while the case was still pending before the district court, either in their original complaint or by a motion to amend. They do not point to any newly discovered evidence or new legal developments. It appears that what happened was that, after their complaint had been dismissed for failure to state a claim upon which relief could be granted, they sought to resurrect their case by asserting a new legal theory that could have been, but was not, timely asserted while the district court case was still alive. In the circumstances, the district court did not abuse its discretion in refusing to permit the Retirees to amend their complaint.

## CONCLUSION

The judgment of the district court is

*AFFIRMED.*