# In the United States Court of Federal Claims

Not for Publication
No. 09-681 C
(Filed: January 29, 2013)

```
*************************************
                                    *
EDNA N. ZULUETA,                    *
                                    *        Breach of Settlement Agreement;
                Plaintiff,          *        Subject Matter Jurisdiction; Money-
                                    *        Mandating Source of Law;
        v.                          *        Relationship to Future Employment;
                                    *        Failure to State a Claim; Breach of
THE UNITED STATES,                  *        Duty; Damages Caused by Breach
                                    *
                Defendant.          *
                                    *
*************************************
```

*Edna N. Zulueta*, Nashville, TN, Plaintiff, pro se.

*Lauren S. Moore*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant; of counsel, *Morgan E. Rehrig*, Office of General Counsel, United States Postal Service.

———————————

## OPINION

———————————

**DAMICH**, Judge:

Plaintiff, acting pro se, seeks money damages for the alleged breach of a settlement agreement dated October 13, 2006, that she reached with her then-employer, the United States Postal Service ("Postal Service" or "USPS"), arising from the attempted resolution of equal employment opportunity complaints Plaintiff made to the USPS in September of 2006.

The Government has moved, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") to dismiss the complaint for lack of subject matter jurisdiction or, in the alternative, pursuant to RCFC 12(b)(6), for failure to state a claim upon which relief can be granted.[1]

---

[1] While Defendant's actual motion, Docket # 42, is based on RCFC 12(b)(1) or, in the alternative, RCFC 12(b)(6), oddly, both Plaintiff's response brief, see Docket # 43, and Defendant's Reply brief, see Docket # 46, refer to the "alternative" to 12(b)(1) as that of a motion for summary judgment. The Court determines

For the reasons stated below, the court finds that it has jurisdiction over Plaintiff's complaint, but grants Defendant's motion to dismiss for failure to state a claim.

## I. Background

Plaintiff was hired by the USPS in 2005 as a mail processing clerk. Def.'s Mot. Dismiss or, in the alt., Mot. Summ. J. 2 ("Def.'s Mot."). In August 2006, she was given a letter of warning for unsatisfactory attendance and undependability in reporting for duty. *Id.*, App. 1.[2] On September 1, 2006, Plaintiff contacted the USPS's Equal Employment Opportunity office disputing the complaint against her and submitting a handwritten document complaining in response that she was being harassed and threatened with physical harm by fellow employees. App. 3-15.

On October 13, 2006, Ms. Zulueta and the USPS executed a settlement agreement. App. 16-17. The agreement, styled "In the matter of mediation between" Ms. Zulueta and USPS "Management Officials," recited that it was a "complete and final settlement" of Ms. Zulueta's equal employment opportunity complaint. The parties mutually agreed that

> Management, Ryan Jenkins, will conduct a full
> investigation regarding threats made toward Edna Zulueta.
> The investigation will be based upon names in Mrs.
> Zulueta's EEO complaint.
>
> In the interim, Mrs. Zulueta will be granted one week leave
> without pay, beginning 4 pm, Oct. 13, 2006, ending
> October 30, 2006. Mrs. Zulueta will report back to work
> October 21, 2006.

*Id.*

In late October and early November 2006, Mr. Jenkins, the Supervisor of Distribution Operations at the USPS facility where Ms. Zulueta worked, interviewed the individuals named in her complaint, took their statements, and "found there to be no merit to her claims." App. 18-27; *see also Zulueta v. United States*, 2009 WL 1651172 (M.D. Tenn. June 10, 2009) ("*Zulueta I*"). After stating his findings, Mr. Jenkins "strongly recommended that Mrs. Edna Zulueta be scheduled for a Fitness for Duty Examination." App. 18; *Zulueta I* at *2.

On December 8, 2006, subsequent to the investigation conducted by Mr. Jenkins pursuant to the Settlement Agreement, the Postal Service notified Ms. Zulueta of a seven-

---

that Defendant has moved in the alternative for dismissal per RCFC 12(b)(6), rather than for summary judgment.

[2] "App. __" refers to the Appendix to Defendant's Motion to Dismiss.

day suspension for having taken unscheduled sick leave in November.  Def.'s Mot. 3; *Zulueta I* at \*1.  On December 11, 2006, Ms. Zulueta complained that the Postal Service had failed to comply with the October 13 Settlement Agreement.  On December 12, 2006, the Postal Service issued her a Request for Fitness for Duty Examination ("FFDE").  App. 28.  The purpose of a FFDE is "to determine whether or not an employee is medically able to perform his or her job responsibilities." *Id*.  Mr. Jenkins stated that the reason for requesting the examination was that "Employee made serious claims against co-workers about wanting to take her life and property." *Id*.

On December 15, 2006, Ms. Zulueta was examined by Dr. W. Lassiter, who determined that she was "not fit for duty." *Zulueta I* at \*2.  Dr. Lassiter reported that, "Physically, she is able to perform her work duties, however, pt. exhibits paranoia that has a potential to deteriorate while at work." *Id*.  She was placed in a non-duty paid leave status. *Id*.  On December 20, 2006, Ms. Zulueta also saw Dr. Greg Kyser for an FFDE.  Dr. Kyser found that she was "suffering from a psychotic disorder of chronic duration. While I did not believe that she is in imminent harm to herself or others, I do not believe that she is fit for duty as an employee of the United States Postal Service." *Id*.  On December 29, 2006, the USPS issued her a Notice of Separation based on inability to perform the requirements of her position, effective January 31, 2007.  App. 29-30.

In follow-up letters to the EEO Office of the Postal Service, Ms. Zulueta reiterated her complaint that the Settlement Agreement had not been honored as well stating complaints against her discharge as discriminatory under the Americans with Disabilities Act and the Rehabilitation Act and retaliatory discharge for having asserted EEO violations.  App. 31; *Zulueta I* at \*3; *Zulueta v. United States* ("*Zulueta II*"), Case No. 09-681, Court of Federal Claims, Docket # 13, "Defendant's Notice of Filing Court Documents" (Complaint filed in United States District Court, Middle District of Tennessee, at 1-3).

In a letter to Ms. Zulueta dated May 2, 2007, the USPS reviewed its handling of the Settlement Agreement, concluded that the agreement had not been breached because Mr. Jenkins had in fact conducted the investigation, and accordingly issued a final agency determination ("FAD") that it would not reinstate Ms. Zulueta's  EEO complaint that led to the Settlement Agreement.  App. 31-32.  The USPS EEO investigation of the Settlement Agreement was assigned a case number, or "Agency No.," of 4H-370-0016-06 (subsequently corrected to 1H-371-0016-6; *see* A. Compl. Exh. 36, App. 61).[3]  Ms. Zulueta then appealed to the United States Equal Employment Opportunity Commission ("EEOC" or "the Commission") on June 4, 2007.  App. 33-36.

In the interim, on March 10, 2008, Ms. Zulueta filed a complaint, Case No. 3-08-0246, in United States District Court for the Middle District of Tennessee alleging discrimination and retaliation in connection with her discharge effective in January 2007. *Zulueta II,* Docket # 13.

---

[3]  Ms. Zulueta's complaints regarding discrimination and retaliation, etc., were apparently the subject of a separate USPS EEO investigation, assigned a case number of  1H-371-0004-07. *See* A. Compl. Exh. 36; App. 61.

On July 8, 2008, the EEOC found that the USPS had failed to supply documentation of its investigation pursuant to the Settlement Agreement and accordingly reinstated Ms. Zulueta's original EEO complaint. App. 40-45. The Commission held that the agency had failed to meet its burden of proof in support of its FAD. "Therefore, we find that the agency breached the agreement." App. 41. The EEOC decision advised, however, that "complainant's FFDE, termination, and concerns with complaint processing are matters that should be addressed as part of" Ms. Zulueta's separate complaint, not as part of her "settlement breach claim." *Id*. It recommended instead that Ms. Zulueta reinstate the particular EEO concerns that had led to the Settlement Agreement.

In resuming her complaint to the USPS EEO Office on August 29, 2008, however, Ms. Zulueta alleged "discrimination under a very hostile workplace environment." More specifically, she asserted

> The most important of which are the FFDE issues, termination issues, and concerns with complaint processing are matters that should be addressed as part of my complaint not just the instant settlement breach claim as noted by the EEOC in its decision and order found in the attached folder, page 11, last paragraph.

App. 53.

Based on this iteration of post- rather than pre-Settlement Agreement EEO complaints, the USPS EEO Office again dismissed her case. App. 61-63. In its dismissal, dated September 24, 2008, it observed that Ms. Zulueta had previously initiated an identical complaint in "Case Number 1H-371-0004-07." That complaint was accepted for investigation on March 28, 2007, in which the accepted issues read:

> The Complainant alleges discrimination based on Physical Disability (Unspecified), Mental Disability (Unspecified), and Retaliation (prior EEO activity) in that since August 29, 2006, she was subjected to harassment when she was bullied and threatened with words and acts, her wages were withheld and her pay records were delayed, and physicians were conspired with to create a condition of physical and mental stability; on December 8, 2006, she was issued a Notice of 7-day suspension; on December 14, 2006, she was instructed to report for a fitness-for-duty examination; on December 15, 2006, she was placed in a non-duty paid leave status; and on December 29, 2006, she was issued a Notice of Separation charging her with Medical Inability to Perform the Requirements of her Position.

-4-

A. Compl. Exh. 36.

The Postal Service had already issued a final decision in that case, on January 11, 2008, finding no discrimination. *Id*. In its September 2008 dismissal, the USPS EEO Office explained that, under EEOC regulations, an agency must dismiss a complaint that states the same claim as one pending or that has already been decided. Thus, rather than articulating her breach of Settlement Agreement claim, in the latter case the Postal Service found that "you are alleging discrimination based on retaliation when you were threatened, scheduled for fitness for duty examination(s), suspended, and terminated. It is clear that you are raising the same issues for which AJ [Administrative Judge] Rodriguez made a finding of no discrimination in Case Number 1H-371-004-07." *Id*.

As a result, on October 10, 2008, Ms. Zulueta then filed a second complaint, Case No. 3-08-0998, in the United States District Court for the Middle District of Tennessee, in which she asserted as a cause of action, "Breach of Settlement Agreement." The District Court, however, determined on March 3, 2009, that Plaintiff's breach of settlement agreement claim against the Federal Government, seeking damages exceeding that court's jurisdictional limit, belonged more properly in the United States Court of Federal Claims.

In June 2009, on Plaintiff's separate disability discrimination and retaliation claim, the United States District Court granted summary judgment in favor of the Government on all counts. *Zulueta I* at *10.

## II.     Standards of Review

It is well-established that subject-matter jurisdiction is "a threshold question that must be resolved . . . before proceeding to the merits" of a claim. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998). When jurisdiction is challenged, the inquiry thus goes not to whether a plaintiff will ultimately prevail, but whether this court has jurisdiction to hear the matter in the first instance. *See Patton v. United States*, 64 Fed. Cl. 768, 773 (2005) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).

In weighing a motion to dismiss for lack of subject-matter jurisdiction, the Court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in [the] plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Nevertheless, when this court's jurisdiction is challenged, it is the plaintiff's burden to demonstrate jurisdiction by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

When a party is acting *pro se*, courts generally accord the party greater leeway than if he or she had professional representation. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"); *Forshey v. Principi*, 284 F.3d 1335, 1337 (Fed. Cir. 2002).

"While a court should be receptive," however, "to pro se plaintiffs and assist them," it must not cross the line between finder of fact and advocate. *Demes v. United States*, 52 Fed. Cl. 365, 369 (2002). Moreover, "the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements." *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007) (citing *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987)).

Even where subject matter jurisdiction over a claim has been established, the claim may be subject to dismissal for "failure to state a claim upon which relief may be granted," pursuant to RCFC 12(b)(6). The allegations of the complaint are construed favorably to the pleader, *Scheuer*, 416 U.S. at 236, but the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Dismissal for failure to state a claim is warranted only when it is "'beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief.'" *Ponder v. United States*, 117 F.3d 549, 552-53 (Fed. Cir. 1997) (cert. denied, 522 U.S. 1110 (1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## III.    Discussion

A.  Motion to Dismiss for Lack of Jurisdiction

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act. 28 U.S.C. § 1491. The Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act itself, however, "does not create substantive rights. Rather, it is a jurisdictional provision 'that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts).'" *Holmes v. United States*, 657 F.3d 1303, 1309 (Fed. Cir. 2011) (quoting *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009)).

The Federal Circuit has explained that the substantive right must stem from another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." *Loveladies Harbour, Inc. v. United States*, 27 F.3d 1545, 1554 (Fed. Cir. 1994). The "other source of law," however, "need not *explicitly* provide that the right or duty it creates is enforceable through a suit for damages, but it triggers liability only if it 'can fairly be interpreted as mandating compensation by the Federal Government.'" *Holmes*, 657 F.3d at 1309 (quoting *Navajo Nation*, 556 U.S. at 290).

Defendant argues that Ms. Zulueta's present claims for reinstatement, money damages, and back pay should be dismissed for lack of jurisdiction because the settlement agreement at issue "does not contain a money-mandating source." Def.'s Reply 1. Defendant noted that the agreement itself "makes no mention of money owed to Ms. Zulueta, or money damages that she would be entitled to in the event of a breach," nor does it "'inherently relate to monetary compensation.'" *Id*. at 1-2 (quoting *Holmes*, 657 F.3d at 1315).

In *Holmes*, the Federal Circuit addressed whether a claimant's two agreements with the Navy "could support a fair inference that he is entitled to the payment of money damages for breach, or was required to demonstrate that the two agreements could fairly be interpreted that way." *Id*. at 1312. The plaintiff argued that the agreements were express contracts and, as such, money damages were the presumptive remedy. The court determined that the money-mandating inquiry for Tucker Act jurisdiction was different for contract-based claims than for constitutional, statutory, or regulatory claims because, generally, damages are the default remedy for breach of contract. The court observed, "[I]n a contract case, the money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract, with no further inquiry being necessary." *Id*. at 1314. Nevertheless, the Federal Circuit recognized that the government's "'consent to suit under the Tucker Act does not extend to every contract,'" *id*. (quoting *Rick's Mushroom Service, Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008)), such as contracts expressly disavowing money damages or agreements in a criminal case. Thus, it found it proper for the trial court "to require a demonstration that the agreements could fairly be interpreted as contemplating money damages in the event of breach." *Id*. at 1315.

In that respect, the court in *Holmes* found that the two agreements in question, under which the Navy agreed to remove certain adverse performance evaluations and records of disciplinary action and to expunge reference to a suspension, "clearly was to prevent Mr. Holmes from being denied future employment based on his record as the Navy maintained it prior to the agreements." *Id*. at 1316. "In short, the agreements

inherently relate to monetary compensation through relationship to Mr. Holmes's future employment." *Id*. Accordingly, the court found jurisdiction in the Court of Federal Claims over the plaintiff's action for breach of the agreements.

In *Cunningham v. United States*, 2012 WL 6720428 (Fed. Cl., Dec. 20, 2012), the Court of Federal Claims faced a similar inquiry. There, the plaintiff alleged breach of a settlement agreement under which the United States Office of Personnel Management had agreed to replace his termination record with a record indicating that he had resigned his position, to remove his termination letter, and to delimit responses to employment inquiries about his past service. The trial court found that the "clear purpose of those obligations was to ensure that Mr. Cunningham's ability to secure future employment (by which plaintiff obviously expected to earn money) would not be harmed by his dispute with OPM." *Id*. at *12. In light of the Federal Circuit's holding in *Holmes*, the *Cunningham* court found that "Mr. Cunningham's settlement agreement with OPM may be fairly interpreted as mandating the payment of damages by the government in the event of breach by the government" and therefore denied the Government's motion to dismiss for lack of subject matter jurisdiction. *Id*. at *13.

The question before the court here, for purposes of subject matter jurisdiction, is whether the court may reasonably infer from the Settlement Agreement that the USPS reached with Ms. Zulueta on October 13, 2006, a contemplation of the payment of money damages in the event of breach of the agreement. While the agreement specifically merely required that the Postal Service "investigate" Ms. Zulueta's allegations that threats of physical harm were directed against her by fellow employees, "based on names in Mrs. Zulueta's EEO complaint," the handwritten notes in which she made her complaint in two instances clearly state a fear that she was being driven from her job. "Or another [illegible] closely working w/ my employer – by making all things hard for me hoping to make me quit my job . . ." App. 10. "One even said 'that's what you get if you don't quit.'" App. 15.

Whether such fears were sound, it can reasonably be inferred that the purpose of the Agreement – that the Postal Service perform its investigation – was to assuage the workplace environment such that Ms. Zulueta would not be driven to resign her position and lose the income from her employment there. The Court therefore finds, under these particular factual circumstances, that the Settlement Agreement was money-mandating for purposes of establishing subject matter jurisdiction. Accordingly, Defendant's motion to dismiss pursuant to RCFC 12(b)(1) is denied.

B. Dismissal for Failure to State a Claim

The Government argues, in the alternative, that Ms. Zulueta's complaint fails to state a claim because the alleged breach of the Settlement Agreement is not the proximate cause of the damages sought. It notes that, to recover for breach of contract, a plaintiff must allege and establish: "(1) a valid contract between the parties, (2) an obligation or duty arising out of that duty, (3) a breach of that duty, and (4) damages caused by the

breach." *San Carlos Irrigation and Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989); *see also Westover v. United States*, 71 Fed. Cl. 635, 640 (2006).

With respect to the fourth element above, "damages caused by the breach," Defendant notes that, in her complaint, Ms. Zulueta seeks $300,000 in damages or an unspecified amount of back pay, reinstatement to her position (with no loss in seniority), and to be put "back into the situation she would have been in if the discrimination had not occurred." A. Compl. 8.

It appears, however, that the remedies Plaintiff seeks relate not to the breach of the Settlement Agreement, but rather to the subsequent actions of the Postal Service in relieving her of her position. As Defendant argues, "Indeed, the alleged failure to investigate could not be the source of Ms. Zulueta's entitlement to reinstatement, damages related to separation, or back pay, because she was not separated from her position until after her allegation of breach of the settlement agreement." Def.'s Mot. 13.

In this regard, the Court notes that Ms. Zulueta's instant complaint for breach of the Settlement Agreement reflects the same, albeit understandable, confusion that stymied her administrative entreaty to the Postal Services' EEO office – that of conflating two potential avenues of complaint, first, the Settlement Agreement, and second, the subsequent complaint regarding the loss of her job at the Post Office. The focus of her cause of action in this court, as transferred from the United District Court for the Middle District of Tennesee, is an allegation of breach of contract, i.e., the Settlement Agreement. Her other cause of action – for discrimination, etc. – was lodged separately at that same court and was decided against her. *See Zulueta I.*

This Court concurs with Defendant that Plaintiff has failed to allege damages caused by the breach of contract. On that basis alone, the Court finds it necessary to grant Defendant's motion to dismiss for failure to state a claim. In addition, moreover, the Court finds that Ms. Zulueta's complaint founders as well on the requirement that she establish a breach of the Settlement Agreement in the first place, the third element required under the Federal Circuit's guidance in *San Carlos.*

Ordinarily, matters outside the pleadings are not considered in a motion to dismiss for failure to state a claim (or for lack of jurisdiction, unless they relate to the jurisdictional issue; *see Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991)), or else the motion must be converted to one for summary judgment and allowance made for the parties to obtain discovery. *Sebastain v. United States*, 185 F.3d 1368, 1374 (Fed. Cir. 1999).[4] "In deciding whether to dismiss a complaint under Rule 12(b)(6)," however, "the court may consider matters of public record." *Id.*; *see also Ground Improvement Techniques, Inc. v. United States*, 2012 WL 6061763 at *4 n.5 (Fed. Cl. Dec. 5, 2012) (court documents may be considered without converting motion to dismiss into motion for summary judgment); *Albino v. United States*, 104 Fed. Cl. 801, 807 n.2 (2012); 5B

---

[4] In *Schism v. United States*, 239 F.3d 1280, 1289 n.2, the Federal Circuit noted that the lead appellant's name in *Sebastain* was misspelled. "It should be Sebastian," but the court determined it would use the case name as reported in the Federal Reporter (including in prior and subsequent case history).

-9-

Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1357 (3d ed. 2004) ("items subject to judicial notice" may be considered without converting Rule 12(b)(6) motion to motion for summary judgment).

Thus, this Court notes the findings of fact taken from the decision of the U.S. District Court in *Zulueta I*, in which the district court found as follows:

> Supervisor Jenkins interviewed Plaintiff's co-workers regarding Plaintiff's allegations that they threatened and harassed her. (Docket Entry No. 12, Attachment 8). The co-workers submitted written statements denying Plaintiff's factual allegations. *Id*. Based upon the 'serious claims against co-workers about wanting to take her life and property,' Jenkins recommended that Plaintiff participate in a Fitness-For-Duty investigation. (Docket Entry No. 12, Attachment 9).

*Zulueta I* at *2.

Taking judicial notice of this finding by the District Court in Tennessee, this Court finds therefore that Plaintiff can prove no set of facts that would entitle her to relief on her allegation of breach of contract. Per the Settlement Agreement, the USPS was obliged to conduct an investigation into the threats against her alleged by Ms. Zulueta. It did in fact conduct such an investigation. [5] Accordingly, Defendant's motion to dismiss for failure to state a claim is granted.

## IV.   Conclusion

For the reasons stated above, although the Court denies Defendant's motion to dismiss for lack of jurisdiction, Plaintiff's complaint is dismissed for failure to state a claim on which relief can be granted.

The Clerk is ordered to enter judgment accordingly.

_____
EDWARD J. DAMICH
Judge

---

[5] In her response to the Government's motion to dismiss, Plaintiff does not even directly contest whether the USPS conducted an investigation per the Settlement Agreement. Rather, she only alludes to the finding of the EEOC that the Agreement was breached, which the EEOC had concluded on the grounds that the Postal Service had apparently failed to provide documentation of its investigation.